403 So.2d 1234 (1981)
STATE of Louisiana
v.
David MALONE.
No. 81-K-0308.
Supreme Court of Louisiana.
September 8, 1981.
*1235 J. Randolph Smith of Guerriero, Smith, Hingle & Anzalone, Monroe, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., Kenneth A. Rains, Allen Harvey, Asst. Dist. Attys., for plaintiff-respondent.
CALOGERO, Justice.[*]
David Malone was charged by bill of information filed by the Morehouse Parish District Attorney's Office with the knowing and intentional manufacture and production of marijuana in violation of R.S. 40:967, an offense which allegedly occurred on August 14, 1980. Defendant filed motions to suppress physical evidence and inculpatory statements. Following a hearing on these motions, the trial judge denied both. We granted defendant's application to review those rulings. 396 So.2d 935 (La. 1981).
In May 1976 defendant entered a guilty plea to a reduced charge of attempted possession of cocaine and received a two year suspended sentence. The trial judge placed defendant on probation for a period of five years. One of the conditions of probation was that defendant "permit the probation officer to visit him at his home or elsewhere *1236 at the option of the officer." John Laird, defendant's probation officer, testified at the hearing on the motions to suppress concerning the circumstances which culminated in discovery of the growing marijuana plants and the arrest of defendant. Mr. Laird was making his first visit at defendant's new residence. Receiving no response to his knock, Laird returned to his automobile which was parked in defendant's driveway. As he did, he noticed a garden hose stretching from defendant's house into a wooded area. This situation aroused Laird's curiosity because he knew that there was considerable cultivation of "contraband" being done in the area. Consequently, he followed the hose into the wooded area where he discovered what appeared to be growing marijuana.
Laird went to the nearby residence of an acquaintance from where he telephoned the Richland Parish Sheriff's Office. The sheriff informed him that defendant's residence was in Morehouse Parish and said that he would summon a police unit from that parish. Mr. Laird returned to defendant's house, observed that the hose had been rolled up, and again knocked on the door. Defendant answered the door and requested that Mr. Laird wait a minute so that he could dry himself. Laird refused and asked to be let in immediately. Defendant complied. Once inside, Laird arrested defendant for violation of his probation.[1]
Sheriff Foster Jones of Richland Parish, and shortly thereafter two deputies from Morehouse Parish, arrived. The group proceeded to the wooded area where defendant was given the Miranda rights and asked whether the marijuana was his. Defendant responded that he was growing the marijuana for a friend. Upon further questioning, defendant admitted that he had harvested one or two plants for himself. At the marijuana patch, defendant was informed by a deputy that he was under arrest for cultivating marijuana.
The state stipulated that no search warrant or arrest warrant was issued before the search and arrest took place. Consequently we must decide the validity of the warrantless search and arrest to determine whether the evidence and statements are admissible.
It is immaterial that the ownership of the wooded area was not established during the hearing on the motions to suppress. Even if defendant does not own the property, under La.Const. art. I, § 5, he may assert that the seizure is unlawful simply if he is adversely affected by it. State v. Green, 376 So.2d 1249 (La.1979).
As a general constitutional rule, warrantless searches are per se unreasonable under the Fourth Amendment. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Had defendant not been on probation, we would have no difficulty holding that the Fourth Amendment right to be free from unreasonable searches had been violated. However, defendant was on probation and that status requires that we carefully consider whether and to what extent defendant, as a probationer, had a reasonable expectation of privacy as relates to the type of intrusion involved here. In State v. Patrick, 381 So.2d 501 (La.1980), we noted that warrantless searches of a parolee's person and residence by a parole officer have been upheld where the search was reasonable, even though less than probable cause was shown, citing cases from the United States Courts of Appeals for the Second and Ninth Circuits: United States ex rel. Santos v. New York State Bd. of Par., 441 F.2d 1216, 1218 (2nd Cir. 1971), cert. den. 404 U.S. 1025, 92 S.Ct. 692, 30 L.Ed.2d 676 (1972); Latta v. Fitzharris, 521 F.2d 246 (9th Cir. 1975), cert. den. 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975).
In Santos, supra, the court considered a warrantless search of a parolee's apartment when the parolee was not at home. The police had received a tip that the parolee was dealing in stolen property and relayed *1237 this information to the parole officer. The parole officer and the police went to the parolee's apartment and were admitted by his landlady. The policeman did not assist in the search which resulted in the discovery of stolen goods. In holding that the evidence need not be suppressed, the court reasoned that a parolee is released on the assumption that he will meet the conditions of his parole, one of which is to refrain from violating the law, and that the parole officer is charged with the duty of enforcing the conditions of parole. According to the court, "[t]o hold that evidence obtained by a parole officer in the course of carrying out this duty cannot be utilized in a subsequent prosecution would unduly immunize parolees from conviction." 441 F.2d at 1218.
In Latta, supra, the court was faced with a slightly different situation in that the parolee had already been arrested when the search took place. The parole officer arrested the parolee at the home of an acquaintance and approximately six hours later searched the parolee's home which was 30 miles away from the location of the arrest. Two police officers accompanied the parole officer, but the court noted that there was nothing in the record to indicate that the police initiated the search. The court observed that the United States Supreme Court in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), had rejected the theory that parolees are in the constructive custody of the state. Nevertheless, the court found that the search was valid, stating that "[t]he purposes of the parole system give the parole authorities a special and unique interest in invading the privacy of parolees under their supervision." 521 F.2d at 249. The court continued that the parolees' "reasonable expectations of privacy are less than those of other citizens." 521 F.2d at 250. The court then stated that a search is permissible when the parole officer reasonably believes that one is necessary, and that the decision may be made on less than probable cause. The court would even allow a search based upon a "hunch" arising from what the parole officer had learned or observed about the behavior and attitudes of the parolee.
Turning to the requirement of a warrant, the court held that a warrant is not a necessity. According to the court, the warrant would serve no real protective purpose because the magistrate would have to take the word of the parole officer because of the broad nature of that individual's authority. Consequently, the warrant would be a "mere piece of paper." The court, however, cautioned that it would not uphold every search by a parole officer, suggesting that those done for the purpose of harassment or intimidation would not be valid: "In short, we do not accept the notion that parole officers may conduct full-blown searches of parolees' homes whenever and as often as they feel like it." 521 F.2d at 252. Finally, the court rejected the contention that the evidence found during the search could only be used for the purpose of the parole revocation hearing and not for prosecution of a new criminal charge, and cited Santos, supra, in support of this holding. A strong dissent took exception to allowing warrantless searches, particularly when based upon a parole officer's hunch.[2]
The same day as it decided Latta, supra, the Ninth Circuit rendered United States v. Consuelo-Gonzalez, 521 F.2d 259 (9th Cir. 1975), and applied the same rationale to probationers which it had applied to parolees. The search in Consuelo-Gonzalez, however, was held unconstitutional because it was conducted by the police rather than by a probation officer.
*1238 The United States Court of Appeals for the Fourth Circuit has rejected the position that a parole officer may conduct a search without a warrant. United States v. Bradley, 571 F.2d 787 (4th Cir. 1978). Rather, that Circuit espouses the reasoning of the Latta dissent: "While we recognize the important governmental interests at stake, we conclude that they have the effect of diminishing the rigorousness of the standard of cause which the parole officer must satisfy to obtain a warrant, not of removing the judicial protection which the warrant requirement interposes between the parole officer and the search." 571 F.2d at 790.
State courts ground their decisions on equally divergent reasoning and standards. Montana requires a search warrant based upon probable cause before a probationer's residence may be searched, although his person and vehicle may be searched by a probation officer without a warrant. State v. Fogarty, 610 P.2d 140 (Mont.1980). Iowa holds that a parolee's Fourth Amendment rights, privileges and immunities "be accorded the same recognition as [that of] any other person." State v. Cullison, 173 N.W.2d 533, 537 (Iowa 1970), cert. den. 398 U.S. 938, 90 S.Ct. 1841, 26 L.Ed.2d 270 (1970). The Cullison court also based its decision upon the Iowa Constitution which states that the only privileges lost by those convicted of a crime are the rights to vote and hold office. Nevada requires that the probation or parole officer "have reasonable grounds to believe that a violation of the parole or probation has occurred" to uphold a warrantless search. Seim v. State, 590 P.2d 1152 (Nev.1979). However, in the Seim case there was involved permission to search as a condition of probation. Ohio holds that probationers and parolees have Fourth Amendment rights, but that "these rights are more limited in scope than those possessed by others." State v. Deener, 64 Ohio St.2d 335, 414 N.E.2d 1055 (1980).
Noting that probation is a privilege and not a right, North Dakota has upheld against constitutional attack a condition of probation which requires the probationer to submit to a warrantless search. State v. Schlosser, 202 N.W.2d 136 (N.D.1972). In United States ex rel. Coleman v. Smith, 395 F.Supp. 1155 (W.D.N.Y.1975), the court ordered the evidence suppressed where the parole officer was on a routine visit and decided to search, finding drug paraphernalia inside a suitcase under the bed. The court stressed that the parolee was not at home and consequently could not have aroused suspicion by his actions and that the parole officer could point to nothing in the way of information which he had received to justify the search. Nor would the court accept the rationale that the search was pursuant to a consent to search agreement which was a condition of parole. Because the consent to search provision was part of the parole package, the court held that the consent was involuntary.
Courts which allow warrantless searches by probation or parole officers are in agreement that the searches must not be a "subterfuge for criminal investigation." E. g. United States v. Dally, 606 F.2d 861 (9th Cir. 1979). Regular police officers may not undertake the search and later seek to justify it by the parole status of the accused. In re Martinez, 1 Cal.3d 641, 83 Cal.Rptr. 382, 463 P.2d 734 (1970), cert. den. 400 U.S. 851, 91 S.Ct. 71, 27 L.Ed.2d 88 (1970).
With the foregoing as background, we now turn our attention to the case at hand. The Colorado Supreme Court espouses what we consider to be the preferred position regarding the interaction of the Fourth Amendment and the status of an individual as a parolee, a position which considered in the light of the discussed opinions is more of a middle course. People v. Anderson, 536 P.2d 302 (Colo.1975). A probationer has essentially the same status as a parolee; in our view both must necessarily have a reduced expectation of privacy. The Fourth Amendment prohibits only unreasonable searches. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). As we said in State v. Patrick, supra: "The test of reasonableness in cases of this nature depends upon the total atmosphere *1239 of each case." 381 So.2d at 503. The Patrick opinion then quotes Bell v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447, 481 (1979):
"The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it and the place in which it is conducted." [cites omitted]
To determine whether the search in the instant case was reasonable we must therefore examine the total atmosphere in which it took place. In the words of Bell v. Wolfish, supra, we must consider (1) the scope of the particular intrusion, (2) the manner in which it was conducted, (3) the justification for initiating it and (4) the place in which it was conducted.
An individual on probation does not have the same freedom from governmental intrusion into his affairs as does the ordinary citizen. In the case before us, the probation officer was not following a tip that defendant was engaging in criminal activity. Mr. Laird was simply doing his job supervising defendant's probation. It surely is not impermissible for a probation officer to walk into the yard of the person he is supervising. This is particularly true where the officer having become reasonably suspicious of the possibility of criminal activity, of a nature which generally and specifically violates the conditions of his probation, investigates that activity. Under these circumstances, Mr. Laird did not need a warrant to conduct his limited search.[3] Having decided that a warrant was not required in this case, we must still consider whether Mr. Laird was justified in deciding to search. In our opinion, a probation officer's decision to search must be supported by something more than a mere hunch; however, a reasonable suspicion that criminal activity is occurring will suffice. We will not require that the officer have probable cause to conduct the search. To hold otherwise would place unnecessary obstacles in the path of a probation officer who is performing his job of supervising the individual assigned to him.
Mr. Laird was following established and permissible procedure when he went to visit defendant. Although not incarcerated, defendant had been convicted of a crime. His continued freedom was predicated upon his conforming his activity to the terms of his probation (not engaging in further criminal activity) and it is one duty of the probation officer to determine that defendant is abiding by the conditions of his probation. To further the purposes of probation, rehabilitation of the convicted individual and protection of society, it is a standard condition of probation that the probationer allow the probation officer to visit his home at the option of the officer. Defendant's conditions of probation included this provision and the probation officer was making a routine visit at the time of the search. Laird had no prior information that defendant was engaging in prohibited activity nor did he learn of the activity at an earlier visit and return later to search for contraband.[4]
*1240 Defendant was on probation for a drug offense. Mr. Laird knew that marijuana was being cultivated in the general area. He was suspicious when he saw a garden hose attached to a faucet on defendant's house leading to a wooded area. He had a right to be knocking on defendant's door and have his car parked in defendant's driveway. The garden hose was in his view from the driveway. We have no doubt that subjectively defendant may have expected the marijuana plants not to be discovered they were located in a wooded area and one had to cross a fence to reach their location. Nevertheless, once Mr. Laird (with his knowledge of marijuana cultivation in the area and his knowledge of defendant's past involvement with drugs) saw the garden hose leading into the woods, he had sufficient reason to follow the hose and learn why it was in that strange location. He certainly had an articulable and reasonable explanation for going into the woods to trace the garden hose.
Although Mr. Laird did cross a fence before he discovered the marijuana plants, the search was not especially intrusive. Laird did not force open a locked door or rummage for several hours through defendant's possessions.[5] We certainly do not consider this search to be a subterfuge for criminal investigation. The search was not initiated at the suggestion of the police; they only became involved following a phone call from the parole officer. Indeed the search which resulted in finding the marijuana was completed before the police were contacted.
The search in the instant case offends neither the Fourth Amendment nor La. Const. art. I, § 5.[6] For the foregoing reasons, the trial judge correctly ruled that the marijuana should not be suppressed.
Defendant also contends that his inculpatory statements should be suppressed, arguing that they were the product of an illegal search and arrest and that they were made without Miranda rights having been given. We have already determined that the search was not illegal; we shall therefore consider defendant's other rationale for suppressing the statements.
As soon as the parole officer entered defendant's house, he placed defendant under arrest for violating probation.[7] Recently, the United States Supreme Court held that a person may not be arrested in his home without a warrant, in the absence of exigent circumstances. Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The state concedes that there was no warrant for defendant's arrest.
Because we find exigent circumstances to support defendant's warrantless arrest in his home, we need not here decide whether Payton is applicable where a person is arrested in his home for probation violation and the arrest is effectuated by his probation officer. Nor need we decide whether R.S. 15:574.8 (see footnote 7) and its provision that a parole officer's arrest of a parolee may be without a warrant has been rendered unconstitutional by Payton's requirement that a person's arrest in his *1241 home must be pursuant to an arrest warrant.
On Mr. Laird's initial visit to defendant's home, the garden hose stretched along a well-worn path into the wooded area. When Mr. Laird returned to defendant's home after contacting the sheriff's office, he noticed that the garden hose no longer stretched into the woods. Instead, the hose lay coiled in defendant's yard. During the short time Mr. Laird had been gone, someone had removed the hose from the wooded area and placed it in a position which presumably would attract less attention. Mr. Laird testified that he could observe the road on which defendant's house is located from the time he left the woods to call the sheriff until he returned from making the phone call. No cars used the road during that period. Nevertheless, defendant answered the door the second time Mr. Laird knocked, thus indicating that he had been in the house at the time of Laird's initial visit. The coiled hose indicated, perhaps, that at least defendant was concerned that the outstretched hose had caused or might cause suspicion to focus on the patch.
While it could always be argued that a person might destroy evidence and leave the jurisdiction before a warrant could be obtained, that alone might not supply the exigent circumstances which would be necessary to obviate the requirement of a warrant. In the instant case, however, someone had already moved the hose to a less conspicuous position. A person alerted that his illegal activity has been discovered is aware that arrest may be imminent and is particularly likely to avoid that arrest by destroying the evidence or leaving the area. In our view, this presents sufficient exigent circumstances to allow a warrantless arrest, albeit in defendant's home.
Finally, we must consider defendant's argument that the statements should be suppressed because they were not preceded by the required Miranda warnings. It is true that Mr. Laird did not give the warnings when he placed defendant under arrest for violation of the conditions of his probation. In State v. Lassai, 366 So.2d 1389 (La.1978), we held that a defendant's admissions to his probation officer were properly admitted in spite of the absence of Miranda warning. In the case before us, defendant made no admissions to his probation officer. The inculpatory statements were made after the group reached the marijuana patch and the record clearly establishes that defendant received Miranda warnings before being questioned by the sheriff's deputy concerning the growing plants.
The trial judge's ruling that the statements are admissible is correct.

Decree
For the foregoing reasons, the rulings of the trial judge are affirmed.
AFFIRMED.
REDMANN, J. ad hoc, dissents and assigns reasons.
NOTES
[*] Judges William V. Redmann and Thomas J. Kliebert of the Court of Appeal, Fourth Circuit, and Judge Cecil C. Cutrer of the Court of Appeal, Third Circuit, participated in this decision as associated justices ad hoc, joined by Associate Justices Pascal F. Calogero, Jr., James L. Dennis, Fred A. Blanche, Jr. and Harry T. Lemmon.
[1] Included in the conditions of his probation was defendant's duty to refrain from violating any law and to refrain from illegally consuming, possessing or using any controlled dangerous substances.
[2] The dissent cited Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), and See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), in support of its position. In these cases, the United States Supreme Court held that warrants are required for administrative searches, but that the warrants may issue on something less than probable cause. The dissent further noted that only when dealing with administrative searches of federally licensed dealers in liquor and firearms has the Supreme Court negated the warrant requirement and then only within the context of the statutory or regulatory scheme. Colonnade Catering Corp. v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970); United States v. Biswell, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972).
[3] We need not in this case consider the extent to which and the circumstances under which a probation officer may or may not be entitled to conduct a warrantless search inside probationer's home.
[4] In Commonwealth v. Brown, 240 Pa.Super. 190, 361 A.2d 846 (1978), the court ordered the evidence suppressed because the parole officer had first noticed the television set and suspected it might be stolen in early January but did not conduct the search until mid-January and then had police assistance. In the eyes of the court, the delay and involvement of the police indicated that the parole officer was acting as a policeman rather than an administrator. Although Mr. Laird brought the police into the case, he did so immediately upon discovering the marijuana.
[5] In both these situations, courts have ordered the evidence suppressed. State v. Cullison, supra; however Iowa accords parolees full Fourth Amendment rights; Commonwealth v. Berry, 265 Pa.Super. 319, 401 A.2d 1230 (1979).
[6] La.Const. art. I, § 5 provides:

"Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.
[7] R.S. 15:574.8 authorizes a parole officer to arrest a parolee if the officer has reasonable cause to believe that the parolee is violating a condition of his parole. This arrest may be without a warrant.