*548
 
 STEWART, J.
 

 |,In these consolidated cases, the defendant, Leon G. Angel, was charged with possession of Schedule II CDS, namely Methamphetamine, in violation of La. R.S. 40:967, possession of Schedule II CDS, namely Amphetamine, in violation of La. R.S. 40:967, and the creation of a clandestine laboratory in violation of La. R.S. 40:98s.
 
 [1]
 
 After the denial of his motion to suppress evidence obtained during the search of his home and property, Angel entered a
 
 Crosby
 
 plea and was sentenced to three years’ imprisonment at hard labor for each count of possession of Schedule II CDS. On the remaining count, he was sentenced to ten years’ imprisonment at hard labor with five years suspended and the remaining five years to be served without the benefit of probation, parole, or suspension of sentence. Angel now appeals the denial of his motion to suppress. Finding no reversible error, we affirm the trial coui't’s denial of the motion to suppress and the defendant’s convictions.
 

 FACTS
 

 On February 19, 2008, a hearing on the motion to suppress the evidence was held. Angel had been previously convicted in Caddo Parish of possession of Schedule II CDS, Methamphetamine. He was on probation and under the supervision of probation officer Randy Rabb.
 

 Rabb stated that on June 7, 2006, he administered a drug test in which Angel tested positive for methamphetamine. Rabb stated he did not move for an arrest on the failed drug test and, instead, referred Angel to “substance abuse.” On June 20, 2006, Rabb was notified by Officer Allen | .¿Dupree, Rabb’s coworker, that Judge Crichton
 
 [2]
 
 wanted Angel arrested because of the failed drug test. Rabb testified he did not remember having any communication with someone working for the Office of Community Services about a confidential drug report. He also testified that he did not know who relayed information about the failed drug test to Judge Crichton. However, he stated that his supervisor, Larry Peka, was apparently the person who communicated with Judge Crichton about arresting Angel.
 
 [3]
 
 Rabb stated he drafted the warrant for the arrest on June 21, 2008, the day after Angel’s arrest because he was acting under an oral order to arrest Angel and did not have time to draft a written warrant.
 

 Officer Rabb testified that he, along with Officer Wayne Hornsby and Officer Dupree of Louisiana Probation and Parole, and several Bossier Parish Deputies went to Angel’s residence. Rabb stated that suspected methamphetamine residue, several beakers, flasks, and other types of drug paraphernalia used in the manufacture of methamphetamine, were seized from a boat house located about 100 yards behind the defendant’s residence.
 

 Probation Officer Wade Hornsby testified that upon entering the defendant’s property, the group saw a young woman in front of the home and, when asked, she informed the officers that Angel was in a travel trailer located to the left of the home. As the officers approached, Angel
 
 *549
 
 stepped out of the trailer and was arrested for probation violations. Hornsby stated 13the probation officers entered the trailer and saw scales, syringes, and a vial with residue which the officers suspected to be narcotics. Hornsby stated that he did not communicate with Judge Crichton, and did not know how he found out about the failed drug test.
 

 Probation Officer Alan Dupree testified that he was in the office when his supervisor, Larry Peka, advised him that he received a phone call from Judge Crichton ordering the arrest of Angel. On the way to arrest Angel, Dupree stated Rabb told him he had been informed that Angel may be manufacturing methamphetamine, but did not disclose the source of the information. Dupree stated that after the arrest, he searched the boathouse while another officer went to search the pool house. The door to the boathouse was locked and the officers attempted to use Angel’s keys to open the door; however, none of them worked. Officer Dupree stated he then looked through a window, saw a rifle scope sitting on a table and then entered the boathouse through the window. Various tubes and canisters were discovered inside the boathouse. Based on their experience, the probation officers determined that these things were likely instruments used in the production of methamphetamine and informed the deputies who, at that point, decided to get a search warrant for the property.
 

 Bossier Parish narcotics agent Shawn Phillips stated he obtained the search warrant for the property. He stated that he observed syringes containing apparent methamphetamine solutions in them, components used in the manufacture of methamphetamine, acids, solvents, lithium batteries, pills, digital scales, and marijuana. Phillips stated that he was the affiant in |4the search warrant. He stated that the probable cause was based on his observations the day of the arrest. He stated that absent the prior search, and statements Angel gave after his arrest, there was no probable cause to get the search warrant.
 

 Based on the results of the search, the defendant was charged with possession of a Schedule II CDS, namely Methamphetamine, in violation of La. R.S. 40:967, possession of Schedule II CDS, namely Amphetamine, in violation of La. R.S. 40:967, and the creation of a clandestine laboratory, in violation of La. R.S. 40:983. Angel was also charged with possession of marijuana and possession of drug paraphernalia. However, pursuant to a plea agreement these charges were dropped. The defendant filed a motion to suppress, which the trial court denied. The defendant then accepted a plea offer and pled guilty pursuant to the provisions of
 
 State v. Crosby,
 
 338 So.2d 584 (La.1976), which reserves the defendant’s right to appeal the trial court’s decision to deny his motion to suppress.
 

 Angel was sentenced to three years’ imprisonment at hard labor for each count of Possession of a Schedule II CDS. He was sentenced to ten years’ imprisonment at hard labor with five years suspended and the remaining five to be served without the benefit of probation, parole, or suspension of sentence for the creation of a clandestine laboratory charge. Upon release, the defendant is to serve three years of active supervised probation and pay a $3,000 fine and court costs. All three sentences imposed are to be served concurrently with credit for time served. A motion to reconsider the sentence was filed and denied. The instant appeal ensued.
 

 LAW AND DISCUSSION
 

 In the defendant’s sole assignment of error, he argues that the trial court erred in failing to grant his motion to
 
 *550
 
 suppress the evidence because the evidence was illegally retrieved. The defendant argues that the probation officers exceeded their authority when they began searching the property.
 

 When a trial court rules on a defendant’s motion to suppress, the appellate court must look at the totality of the evidence presented at the hearing on the motion to suppress. The appellate court should not overturn a trial court’s ruling unless the trial court’s conclusions are not supported by the evidence, or there exists an internal inconsistency in the testimony of the witnesses, or there was a palpable or obvious abuse of discretion.
 
 State v. Robertson,
 
 2006-167 (La.App. 3 Cir. 7/16/08), 988 So.2d 294;
 
 State v. Gaspard,
 
 96-1279 (La.App. 3 Cir. 2/11/98), 709 So.2d 213.
 

 U.S. Const. Amend. IV states in pertinent part:
 

 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.
 

 La. Const. Art. I, § 5 specifies a right to privacy:
 

 Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy.
 

 La. C. Cr. P. Art. 899(B) states:
 

 B. If a probation officer has reasonable cause to believe that a defendant has violated or is about to violate a condition of his probation or that an emergency exists so that awaiting an order of the court would create an undue risk to the public or to the probationer, the probation officer may arrest the defendant without a warrant, or may authorize a peace officer to do so. | f,The authorization may be in writing or oral, but if not written, shall be subsequently confirmed by a written statement. The written authorization or subsequent confirmation delivered with the defendant to the official in charge of a parish jail or other place of detention shall be sufficient authority for the detention of the defendant. The probation officer shall immediately notify the proper court of the arrest and shall submit a written report showing in what manner the defendant violated, or was about to violate, a condition of his probation.
 

 While a warrantless search is generally unreasonable, a person on parole or probation has a reduced expectation of privacy under the Fourth Amendment of the U.S. Constitution and under Article I, § 5 of the Louisiana Constitution.
 

 Probationers and parolees occupy essentially the same status. Both, it is well recognized, have a reduced expectation of privacy which allows reasonable warrantless searches of their person and residence by them probation or parole officer, even though less than probable cause may be shown.
 
 State v. Malone,
 
 403 So.2d 1234 (La.1981);
 
 State v. Vailes,
 
 564 So.2d 778 (La.App. 2 Cir. 6/20/90). That reduced expectation of privacy evolves from a probationer’s conviction and agreement to allow a probation officer to investigate his activities in order to confirm compliance with the provisions of his probation. It is an appropriate function of a probation officer to conduct unannounced, random checks on probationers. A probationer agrees to submit to such unannounced visits from his parole officer as a condition of parole.
 
 State v. Robertson,
 
 2006-167 (La.App. 3 Cir. 7/16/08), 988 So.2d 294.
 

 An individual on probation does not have the same freedom from governmental intrusion into his affairs as does the ordinary citizen.
 
 United States v. Knights,
 
 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001);
 
 State v. Drane,
 
 36,230 (La.App. 2
 
 *551
 
 Cir. 9/18/02), 828 So.2d 107. A probationer’s or parolee’s reduced expectation of privacy occurs as a result of his prior conviction and the circumstance of his agreement to allow a probation or parole officer to investigate his activities in order to confirm compliance'with the conditions of his probation or parole.
 
 State v. Drane, supra.
 
 As a probationer, Angel has a reduced expectation of privacy.
 

 However, a probationer is not subject to the unrestrained power of the authorities. Even though warrantless searches by a probation or parole officer are allowed, a search to which a probationer is subjected may not serve as a subterfuge for a police investigation. Instead, it is to be conducted when the probation officer believes such a search is necessary in the performance of his duties, and must be reasonable in light of the total atmosphere in which it takes place.
 
 State v. Robertson, supra; State v. Vailes, supra.
 

 In
 
 Malone,
 
 the Louisiana Supreme Court adopted the factors from
 
 Bell v. Wolfish,
 
 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447, 481 (1979), to determine if a warrantless search of a probationer’s home violated the probationer’s Constitutional rights. The factors include: (1) the scope of the particular intrusion, (2) the manner in which it was conducted, (3) the justification for initiating it, and (4) the place in which it was conducted.
 

 In
 
 Malone,
 
 the court stated in that case the search was not a subterfuge for a police investigation because the police were not the ones |Rwho initiated the search. Rather, it was the parole officer who called the police.
 

 Rabb’s duty as a probation officer demanded that he assure Angel’s compliance with the terms of probation. Angel’s reduced expectation of privacy, in turn, allows for an intrusion on his person and residence by his probation officer.
 

 When applying the reasonableness factors adopted in
 
 Malone,
 
 we find that the officers did not exceed their authority and did act reasonably when conducting this search. In regards to the first factor, the scope of the particular intrusion was appropriate because the officers were validly on the premises to arrest Angel pursuant to a bench warrant issued by Judge Crichton who sentenced Angel to probation. As stated above, this bench warrant was issued pursuant to Angel’s failed drug test.
 

 After examining the second factor, the manner in which the search was conducted, we agree that the officers acted appropriately. Since the officers were on the property pursuant to an arrest warrant, their presence was not intrusive.
 

 The officers clearly met the third factor, which is the justification for initiating the search. When the officers arrived at Angel’s trailer to arrest him, they observed narcotics, drug paraphernalia, and the scope of a rifle in plain view. Considering the surrounding circumstances, including the facts that drugs and drug paraphernalia were already discovered in the trailer, that Angel was not allowed to have firearms and that a rifle scope was in plain view, we agree with the trial court that the manner in which the officers entered the boathouse was proper. Additionally, the officers initially |nattempted to get keys from Angel and did not destroy property when entering the trailer. These factors combined justify initiating the search on Angel’s property.
 

 Addressing the fourth and final factor, we definitely agree that the officers acted appropriately in searching Angel’s home. While the home is a sacred venue for people, as previously stated, a warrantless search of the home of a probationer by a probation officer is permissible if the officer has a reasonable suspicion that criminal activity is occurring.
 
 State v. Drane,
 
 
 *552
 

 supra; State v. Malone, supra.
 
 The officers in this matter had a valid arrest warrant for Angel who was placed on probation for possession of CDS and subsequently failed a drug test. One of the officers in the case was also informed that Angel was manufacturing drugs. Inspecting the trailer was within the bounds of reason. After discovering the illicit items in the trailer and viewing the rifle scope, the ensuing search in the boathouse was justified as well.
 

 The defense points to Officer Phillips’ testimony to persuade the court that probable cause did not exist. The existence of probable cause is of little importance as the jurisprudence is clear that something less than probable cause is enough to justify a search of a probationer.
 

 While a probationer still has a right to privacy, it is clearly a diminished right. Therefore, this assignment of error has no merit.
 

 CONCLUSION
 

 For the foregoing reasons, we affirm the trial court’s denial of the motion to suppress and the defendant’s convictions.
 

 AFFIRMED.
 

 [1]
 

 . Since the entire record for all three cases is in No. 44,924-KA, and they are the same procedurally, no distinction between the cases will be made hereinafter.
 

 [2]
 

 . Judge Crichton sentenced Angel in his first conviction for possession of Methamphetamine.
 

 [3]
 

 .In ils brief, the defense states it was unable to call Agent Peka and chose not to call a sitting judge.