STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-317


CHARLES CUTLER

VERSUS

BETH MCGEE, ET AL.


**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2008-3397
HONORABLE D. KENT SAVOIE, DISTRICT JUDGE

**********

**PHYLLIS M. KEATY**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, and Phyllis M. Keaty, Judges.


**AFFIRMED.**


**Charles Cutler**
**In Proper Person**
**LADOC #322866**
**499 Old Columbia Road**
**Harrisonburg, Louisiana 71340**
**Plaintiff/Appellant**

**Elizabeth B. Hollins**
**Assistant Attorney General**
**One Lakeshore Drive, Suite 1200**
**Lake Charles, Louisiana 70629**
**(337) 491-2880**
**Counsel for Defendants/Appellees:**
      **Louisiana Department of Public Safety & Corrections, Board of Parole**
      **Beth McGee**

**KEATY, Judge.**

Plaintiff, Charles Cutler, in proper person, appeals from a judgment granting summary judgment in favor of defendants, Beth McGee and the State of Louisiana, Department of Public Safety and Corrections, Board of Parole (collectively referred to as the State). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

### *Cutler I*

This matter has previously come before this court. The following factual scenario was laid out in *Cutler v. McGee*, 09-1290, p. 1 (La.App. 3 Cir. 5/5/10), 38 So.3d 481, 484, *writ denied*, 10-1879 (La. 11/19/10), 49 So.3d 393 (hereafter referred to as *Cutler 1*):

> The plaintiff, an inmate in the custody of the Louisiana Department of Public Safety and Corrections, filed suit against his parole officer, [Beth McGee,] the State of Louisiana, through the Department of Public Safety and Corrections, Board of Parole, as her employer (the State), and police officers employed by the City of Sulphur along with the City of Sulphur as their employer (the City), complaining that his parole officer and the police officers engaged in negligent and criminal acts that resulted in his parole being revoked, which caused him to suffer "hardship and money loss."

More specifically, Plaintiff alleged that:

> [P]ursuant to a false complaint his girlfriend made to the City's police department, police officers employed by the City and Beth McGee, his parole officer, illegally entered his home on January 6, 2008, engaged in illegal, criminal, and negligent acts therein, and illegally seized property belonging to him. He further alleged that as a result of the City's and his parole officer's actions, a parole revocation proceeding was instituted against him and illegally-seized evidence was used against him at the hearing. . . . The plaintiff claimed that the actions of all the defendants caused him mental pain and suffering, hardship, loss of personal property, and loss of wages. He sought to recover compensation, return of the fees he paid to [the attorney he hired to represent him at the parole revocation hearing], another preliminary hearing, another parole hearing, and an admission by the defendants that they illegally obtained evidence from his home and used it against him in violation of his rights.

*Id.*

"The State filed exceptions of failure to exhaust administrative remedies [and] failure to state a cause of action . . ., seeking dismissal of the plaintiff's claims against it."[1] *Id.* "The trial court granted the exception of failure to exhaust administrative remedies and dismissed the plaintiff's claims against the State without prejudice; it declared the State's remaining exceptions moot." *Id.* at 485. Plaintiff sought writs with this court which were denied. However, because the appeal delays had not lapsed when the denial was issued, we considered Plaintiff's application as a timely-filed motion for appeal and converted it to an appeal. *See Cutler v. McGee,* an unpublished opinion bearing docket number 09-164 (La.App. 3 Cir. 3/11/09).

On the merits of Plaintiff's appeal in *Cutler I*, we reversed the trial court's dismissal of Plaintiff's claims against the State and remanded for further proceedings. We determined that Plaintiff's suit was "not a prisoner suit governed by the [Prison Litigation Reform Act] (PLRA), La.R.S. 15:1181-1191]" because "[P]laintiff was not a "prisoner" at the time the actions he complains of occurred, and his complaints do not pertain to the conditions of his confinement or the effects of the State's actions on him while confined in prison." *Id.* at 486. In addition, we found that Plaintiff's complaints that his parole officer entered his home and seized his property without permission "encompassed violations of constitutionally-protected and statutorily-protected rights" not governed by the Corrections and Administrative Remedy Procedures (CARP), La.R.S. 15:1171-1179]. *Id.* Thus, we held that Plaintiff was not required to exhaust the administrative remedies found in CARP and that the trial court erred in dismissing his claims against the State on that basis.

---

[1] The State also filed an exception of improper service which it later withdrew and which is not relevant to this appeal.

Relying on the limitations set forth in La.R.S. 15:574.9 and 15:574.11(A), which deal with rules of parole and the rights of parolees and which provide that the grant or revocation of parole is a discretionary act, the State argued in *Cutler 1* that Plaintiff's petition failed to state a cause of action against it. We again disagreed, noting that "the plaintiff's claims involve traditional civil matters over which district courts retain original jurisdiction; therefore, they are not affected by these statutes." *Id.* at 487.

The State next argued Plaintiff had no cause of action because his status as a parolee resulted in his having a reduced expectation of privacy. In rejecting the State's contention, we noted the record did not include the conditions of Plaintiff's parole nor Plaintiff's signed agreement to those conditions. We further noted that while the law provides for the warrantless search of a parolee's home where his parole officer had "'reasonable suspicion that criminal activity [wa]s occurring,'" such search must pass the reasonableness test established in *State v. Malone*, 403 So.2d 1234 (La.1981). *Id.* at 488 (citation omitted). We were unable to perform the reasonableness test in *Cutler 1*, however, because the record did not contain the pertinent facts surrounding the search of Plaintiff's home. In addition, we noted that despite the fact Plaintiff's petition stated the police were *allegedly* given permission to search by a woman at his home and the police *claimed* to have seen an illegal substance in plain view upon entering the home, Plaintiff's petition nevertheless stated a cause of action against the State.

Finally, because the record did not contain evidence regarding service of process on the State, we were unable to address the State's exception of improper service, and we remanded that issue to the trial court. As mentioned previously, the supreme court denied writs in *Cutler 1*.

3

## *The Current Appeal*

In September of 2011, after the case was remanded to the trial court, the State filed a motion for summary judgment on the basis that, in his parole agreement, Plaintiff agreed to searches (of his person, property, residence, vehicle, and personal effects) at any time and without a warrant by his probation or parole officer if she reasonably suspected he was engaged in criminal activity. It also claimed Plaintiff offered no evidence to show it had taken his legal documents or medication without his permission. Attached to the motion as "Exhibit A" was an affidavit from Beth McGee who stated she was an agent with the Louisiana Department of Public Safety and Corrections, Division of Probation and Parole, working in the Lake Charles District Office at the time of the alleged incident. She certified that the attached records were true copies kept in the normal course of business at her office. Exhibit B contained Plaintiff's 2004 pre-parole investigation, including his Louisiana rap sheet. Plaintiff's Certificate of Parole was attached to the motion as Exhibit C. Exhibits D and E contained Plaintiff's 2007 and 2008 parole violations, respectively. Documents pertaining to Plaintiff's 2008 parole revocation were attached as Exhibit F. Exhibit G was another affidavit from Beth McGee wherein she stated the following:

> 1. On January 7, 2008, she received a call from Detective Trent Hansen, Combined Anti-Drug Taskforce, advising that they were searching Charles Cutler's residence located at 305 W. Carlton Street, Sulphur, Louisiana because of numerous complaints in reference to narcotic activity at that location.
>
> 2. Detective Hansen advised her that the Combined Anti-Drug Taskforce received permission to search Charles Cutler's residence from another resident and during the search, marijuana and other items of interest were located.
>
> 3. While in Charles Cutler's residence, four (4) prescription bottles were located verifying that Charles Cutler traveled to Texas to have prescriptions filled while on parole.

4. She located a contract, drawn up by Charles Cutler, showing Amy Bruney (DOC#526860) agreed to have sex and reside with him in exchange for Charles Cutler bonding her out of jail.

The State's motion for summary judgment came for hearing on October 31, 2011. Counsel for the State was present and Plaintiff was present via the internet. At the start of the hearing, the State offered into evidence its motion for summary judgment, along with its memorandum in support, and the exhibits attached thereto, which the trial court received into evidence as State's Exhibit No. 1.

Plaintiff confirmed that he was served with the State's motion, memorandum, and exhibits and that he had filed a response to the State's motion. The trial court allowed Plaintiff to fax over the documents that Plaintiff had allegedly attempted to file through inmate counsel, but which were not received by either the trial court or by counsel for the State. After reviewing all of the documents filed by Plaintiff, the trial court remarked that it had found nothing "that would suffice as an affidavit" to oppose the affidavits and evidence offered by the State in support of its motion for summary judgment. With respect to Plaintiff's alleged attempt to subpoena Beth McGee and himself,[2] the trial court explained that because no live testimony can be offered in conjunction with motions for summary judgment, it would have denied the subpoena requests had they been timely received. The trial court denied Plaintiff's Motion to Rescind the State's Exhibit C, in which Plaintiff claimed that the document was "too degraded to read and/or comprehend," noting that it had reviewed the document and found it to be legible. The trial court rejected Plaintiff's claim that summary judgment should not be granted because both he and the State requested a jury trial, explaining that summary judgment was a mechanism that could end litigation before a trial. At the conclusion of the

_____

[2] We have examined the record in its entirety and can find no documents indicating that Plaintiff tried to subpoena anyone to appear at the summary judgment hearing.

hearing, the trial court ordered the clerk to file into the record the documents faxed by Plaintiff that morning. It then stated in open court that it was granting summary judgment in favor of the State and dismissing Cutler's suit, with prejudice, at his cost. Written judgment was signed on November 21, 2011.

Plaintiff now appeals, in proper person, assigning the following errors: 1) summary judgment was erroneously granted because material facts remained and because he is entitled to a jury trial; 2) the trial court showed bias in favor of summary judgment over a jury trial because the parties had requested a jury trial long before the summary judgment motion was filed; 3) there should have been a jury trial since Plaintiff objected to the motion for summary judgment; 4) subpoena errors; and 5) the trial court should have granted his motion to impeach Beth McGee's credibility.

## DISCUSSION

Summary judgment is a procedural tool "designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends." La.Code Civ.P. art. 966(A)(2). If the motion for summary judgment and supporting affidavits show that there is no genuine issue of material fact, the mover is entitled to a judgment as a matter of law. La.Code Civ.P. art. 966(B).

In *Schultz v. Guoth*, 10-343, pp. 6-7 (La.1/19/11), 57 So.3d 1002, 1006, the supreme court explained:

[Louisiana Code of Civil Procedure Article 966(C)(2)] initially places the burden of producing evidence at the hearing on the motion for summary judgment on the mover, who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent's case. *Samaha v. Rau*, 07-1726, p. 4 [(La.2/26/08)], 977 So.2d [880] at 883. "At that point, the party who bears the burden of persuasion at trial (usually the plaintiff) must come forth with evidence

6

> (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial. . . . Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion." *Id.* (quoting *Wright v. Louisiana Power & Light*, 06-1181, p. 16 (La.3/9/07), 951 So.2d 1058, 1069-70).

*Atherton v. Palermo*, 11-256, p. 5 (La.App. 3 Cir. 10/26/11), 76 So.3d 1253, 1256.

"Appellate courts review summary judgments *de novo*, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate." *Broussard v. La. Farm Bureau Cas. Ins. Co.*, 12-15, p. 2 (La.App. 3 Cir. 5/9/12), 91 So.3d 537, 539.

## *Assignments of Error 1, 2, and 3*

In his first three assignments or error, Plaintiff contends that the trial court erred in not allowing his case to proceed to a jury trial because the parties had timely prayed for such before the State filed its motion for summary judgment, because "there are issues and controversy over material facts," and because he opposed the State's motion for summary judgment. Plaintiff fails to cite any case law or jurisprudence in support of these assignments of error.

"[T]here is no constitutional due process right to trial by jury in a civil case in Louisiana . . . [a]nd the mere fact that a party has requested trial by jury does not preclude rendition of summary judgment, as somehow violative of the party's right to access to the courts." *Judson v. Davis*, 04-1699, pp. 23-24 (La.App. 1 Cir. 6/29/05), 916 So.2d 1106, 1121-22, *writ denied*, 05-1998 (La. 2/10/06), 924 So.2d 167 (citation omitted). Accordingly, the trial court did not err by granting summary judgment where the parties had previously prayed for trial by jury.

Plaintiff's next contention is that summary judgment should not have been granted because he opposed the motion and because issues of material fact

remained. We disagree. Once the State supplied the trial court with affidavits and documents to support its claim that Plaintiff had agreed to searches of his property at any time and without a warrant if his parole officer reasonably suspected that he was engaged in criminal activity, it satisfied its burden of proof on summary judgment. It was incumbent upon Plaintiff to produce evidence of a material factual dispute in order to defeat the grant of summary judgment against him. Rather than doing so, Plaintiff relied on the mere allegations contained in his petition and in his opposition to summary judgment, without offering specific factual support that he would be able to satisfy his evidentiary burden of proof at trial.

Our de novo review of the State's motion for summary judgment, with its accompanying affidavits and exhibits, convinces us that the State was entitled to summary judgment as a matter of law. Accordingly, Plaintiff's first three assignments of error lack merit.

### *Assignment of Error 4*

Plaintiff's fourth assignment of error is that the trial court erred in denying his request to subpoena Beth McGee. Plaintiff fails to cite any case law or jurisprudence in support of this assignment of error. As mentioned previously, there are no documents in the record indicating that Plaintiff tried to subpoena anyone to appear at the summary judgment hearing. Likewise, no subpoena requests are contained in the documents Plaintiff faxed to the trial court during the summary judgment hearing or in the appellant brief or reply brief that Plaintiff filed with this court. Nevertheless, even assuming that Plaintiff had timely filed any subpoena requests, the trial court did not err in denying those requests because the Louisiana Code of Civil Procedure provides that summary judgment should be decided upon "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any." La.Code Civ.P. art. 966(B). Accordingly, the courts of this state have long held that "[t]estimony should neither be received nor considered, even with consent of counsel, to decide a motion for summary judgment." *Urban Mgmt. Corp. v. Burns*, 427 So.2d 1310 (La.App. 2 Cir. 1983), 427 So.2d 1310, 1311. There is no merit to Plaintiff's fourth assignment of error.

### *Assignment of Error 5*

In his fifth assignment of error, Plaintiff argues that the trial court should have granted his motion to impeach Beth McGee's credibility. Again, Plaintiff fails to cite any case law or jurisprudence in support of this assignment of error. The transcript from the summary judgment hearing shows that the trial court did not receive the motion to impeach Beth McGee's credibility until it was faxed over during the pendency of the hearing. Nevertheless, the trial court stated that it read all of the documents Plaintiff submitted in opposition to the State's motion and that it found nothing "that would suffice as an affidavit" to oppose the State's properly supported motion for summary judgment.

The affidavits of Beth McGee, which the State offered in support of its motion for summary judgment, comported with the requirements of La.Code Civ.P. art. 967. They are based on her personal knowledge gained in the course of her employment as an agent with the Louisiana Department of Public Safety and Corrections, Division of Probation and Parole, and they set forth facts that would be "admissible in evidence." La.Code Civ.P. art. 967(A). *See Butzman v. La. Power & Light Co., Inc.*, 96-2073 (La.App. 4 Cir. 4/30/97), 694 So.2d 514.

On the other hand, the motion to impeach McGee's credibility contains Plaintiff's allegations that Beth McGee made false statements in her affidavits. Plaintiff did not, however, support those allegations with affidavits, deposition

testimony, or answers to interrogatories. *See* La.Code Civ.P. art. 967(A). The law is clear that once a properly supported motion for summary judgment is made, "an adverse party may not rest on the mere allegations or denials of his pleading[s], but his response, by affidavits or otherwise . . . must set forth specific facts showing that there is a genuine issue for trial." La.Code Civ.P. art. 967(B). "If he does not so respond, summary judgment, if appropriate, shall be rendered against him." *Id.* As mentioned previously, our de novo review of the State's motion for summary judgment, with its accompanying affidavits and exhibits, convinces us that the State met its burden of proving that it was entitled to summary judgment as a matter of law. Thus, even if Plaintiff's allegations that Beth McGee made false statements in her affidavits had been contained in an affidavit, "an affidavit in opposition which contains hearsay statements and is aimed at impeaching the credibility of mover's affidavit does not create a material issue of fact to defeat summary judgment." *Butzman*, 694 So.2d at 517. The trial court did not err in refusing to grant Plaintiff's late-filed motion to impeach Beth McGee's credibility in the face of the State's properly supported motion for summary judgment. Plaintiff's fifth assignment of error has no merit.

**DECREE**

For the foregoing reasons, we affirm the grant of summary judgment in favor of defendants, Beth McGee and the State of Louisiana, Department of Public Safety and Corrections, Board of Parole, dismissing Charles Culter's suit against them with prejudice. Costs of this appeal are assessed against Charles Culter.

**AFFIRMED.**

10