EDWARD A. DUFRESNE, JR., Chief Judge.
 

 l2On February 14, 2006, the Jefferson Parish District Attorney filed a bill of information charging defendant, Stafford Bolden, with possession of a firearm by a convicted felon, in violation of LSA-R.S. 14:95.1 (count one), and possession of cocaine between 28 and 199 grams, in violation of LSA-R.S. 40:967 F (count two). At the arraignment, defendant pled not guilty. Defendant then filed a motion to suppress evidence which was heard and denied on May 30, 2006.
 

 Thereafter, on October 23, 2006, defendant withdrew his not guilty plea and pled guilty as charged pursuant to
 
 State v. Crosby,
 
 338 So.2d 584 (La.1976), reserving his right to appeal the denial of his motion to suppress. The trial court sentenced defendant on count one to imprisonment at hard labor for ten years without benefit of parole, probation, or suspension of sentence, and on count two to imprisonment at hard labor for ten years with the sentences to run concurrently.
 

 The State filed a multiple offender bill of information pursuant to LSA-R.S. 15:529.1 alleging defendant to be a second felony offender. After defendant |i¡admitted the allegations, the trial court vacated the original sentence on count two and sentenced defendant as a multiple offender to imprisonment at hard labor for fifteen years without benefit of probation or suspension of sentence to run concurrently with any other sentence defendant was serving. Defendant subsequently filed an application for post-conviction relief seeking an out-of-time appeal which the trial court granted.
 

 FACTS
 

 On January 31, 2006, Agent Bryan Poison, defendant’s parole officer, went to defendant’s girlfriend’s apartment located at 161 Fredricks to conduct a residence check. The agent knocked on the door, and Brandon Atkins, an individual who was also staying at the apartment, answered it. After the agent identified himself, Atkins called to defendant who was in another room. Defendant came from the back bedroom and greeted the agent.
 

 Defendant and Agent Poison conversed in the front room. Defendant then said he had to go brush his teeth, which Agent Poison thought was odd. Agent Poison followed defendant down the hallway. At that time he looked “catty-corner” and saw a gun in plain sight on the bedroom dresser. Because defendant had violated his parole by having a gun in the residence, Agent Poison placed defendant in handcuffs and called for his partner, Agent Guidry, to come inside the residence. Agent Guidry watched defendant while Agent Poison conducted a search of the residence. During that search, Agent Poison found 117 grams of cocaine, $1,709.00, a scale, and defendant’s identification with a razor blade and a crack cocaine rock on top of it. The agent also found, underneath the gun, the paper that he had recently given defendant showing his arrear-ages with parole.
 

 After considering Agent Poison’s testimony as well as arguments of counsel, the trial judge denied the motion to suppress finding that the agent had the right to Renter the apartment, and further, that once the agent observed a gun in plain view in the bedroom of the residence, he had the right to conduct a search.
 

 ASSIGNMENT OF ERROR NUMBER ONE
 

 On appeal, defendant challenges the trial court’s denial of his motion to suppress
 
 *1171
 
 evidence. For the reasons that follow, we find no error in the trial court’s ruling.
 

 The Fourth Amendment of the U.S. Constitution and Article I, § 5 of the Louisiana Constitution protect individuals from unreasonable searches and seizures. Warrantless searches and seizures are unreasonable per se unless justified by a specific exception to the warrant requirement.
 
 State v. Manson,
 
 01-159 (La.App. 5 Cir. 6/27/01), 791 So.2d 749, 757,
 
 cert. denied,
 
 01-2269 (La.9/20/02), 825 So.2d 1156. However, a person on parole or probation has a reduced expectation of privacy under the Fourth Amendment of the U.S. Constitution and under Article I, § 5 of the Louisiana Constitution.
 
 State v. Young,
 
 07-988 (La.App. 5 Cir. 6/19/08), 988 So.2d 759, 762.
 

 An individual on parole or probation does not have the same freedom from governmental intrusion into his affairs as does the average citizen. A probationer must necessarily have a reduced expectation of privacy, which allows for reasonable warrantless searches of his person and residence by his probation officer, even though less than probable cause may be shown. This reduced expectation of privacy derives from the probationer’s conviction and his agreement to allow a probation officer to investigate his activities in order to confirm that he is abiding by the provisions of his probation.
 
 State v. Saulsby,
 
 04-880 (La.App. 5 Cir. 12/28/04), 892 So.2d 655, 657-658.
 

 A probation officer may not use his authority as a subterfuge to help another police agency that desires to conduct a search, but lacks probable cause.
 
 State v. Malone,
 
 403 So.2d 1234, 1238 (La. 1981). The parole or probation officer must believe that the search is necessary in the performance of his duties and reasonable in light of the total circumstances.
 
 State v. Saulsby,
 
 892 So.2d at 658. In determining whether a warrantless search by a probation or parole officer was reasonable, the court must consider: (1) the scope of the particular intrusion, (2) the manner in which it was conducted, (3) the justification for initiating it, and (4) the place in which it was conducted.
 
 State v. Malone,
 
 403 So.2d at 1239;
 
 State v. Young,
 
 988 So.2d at 763-764. Although the State still bears the burden of proving the admissibility of evidence seized without a warrant, when the search is conducted for probation violations, the State’s burden will be met when it establishes that there was reasonable suspicion that criminal activity was occurring.
 
 State v. Saulsby,
 
 892 So.2d at 658.
 

 In challenging the trial court’s denial of his motion, defendant argues that the evidence should have been suppressed because the search was conducted in his girlfriend’s residence and not the residence he listed on his parole plan, and his reduced expectation of privacy did not extend to his girlfriend’s residence.
 

 In the present case, the record indicates that defendant was residing at his girlfriend’s apartment. The parole officer testified that defendant was never at his mother’s residence on Cabildo when he went to visit him, even though that address was listed as defendant’s residence on his parole plan. Defendant told his parole officer on January 19, 2006 and again on January 26, 2006, that he was living with his girlfriend at the King Fre-dricks Apartments and that the officer could visit him there. When Officer Poison went to conduct a residence check on January 31, 2006, defendant was at the Fredricks Street address; in fact, when he was advised that the officer was there, defendant came from a back bedroom, greeted the officer, and invited him in. Additionally, the parole officer found some
 
 *1172
 
 of | ^defendant’s belongings in the apartment, namely, defendant’s identification and the paper the parole officer had given defendant a few days prior regarding his arrearages with the parole office which he found underneath the gun on the nightstand.
 

 Even though defendant did not give the officer written notification of his change of residence, he verbally notified the officer on two occasions that he was living at his girlfriend’s residence. Because defendant resided in his girlfriend’s apartment, his parole officer had the right to enter the residence and speak to him due to defendant’s reduced expectation of privacy as a parolee. The evidence shows that the parole officer did not make a forced entry, and defendant greeted him in an apparently friendly manner. As the parole officer was walking toward the bathroom, he observed a gun on the nightstand in a bedroom. Under the plain view doctrine, if police officers are lawfully in a position from which they view an object that has an incriminating nature which is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant.
 
 State v. Manson,
 
 791 So.2d at 757. Because the parole officer had the authority to enter defendant’s residence due to his status as a parolee, the parole officer had the right to seize the gun he saw in plain view. Since the parole officer then had reasonable suspicion of criminal activity, he was authorized to conduct a thorough search of the apartment.
 
 State v. Saulsby,
 
 892 So.2d at 658.
 

 On appeal, defendant also argues that the evidence should have been suppressed because the State failed to prove that he had agreed to a search of his residence as a condition of parole.
 

 At the suppression hearing, Agent Poison testified that, as part of his work as a parole officer, he is allowed to go into parolees’ homes without an invitation. He further testified that being allowed to go inside a parolee’s residence is one of |7the standard conditions of parole. In the instant case, the State did not provide documentation at the hearing that defendant had agreed to a search of his residence as a condition of parole. However, Agent Poison’s testimony that he was allowed to go into parolees’ homes and that that was a standard condition of parole was not refuted. As the State noted in its brief, this is consistent with LSA-R.S. 15:574.4 H(4)(m) and (r).
 
 [1]
 
 Also, the jurisprudence recognizes such conditions. In
 
 State v. Wesley,
 
 28,941 (La.App. 2 Cir. 12/13/96), 685 So.2d 1169, 1174,
 
 writ denied,
 
 97-0279 (La.10/10/97), 703 So.2d 603, the appellate court noted that it is an appropriate function of a parole officer to conduct unannounced, random checks on parolees and further that a parolee agrees to submit to such unannounced visits from his parole officer as a condition of parole.
 

 Defendant also argues on appeal that the evidence should have been suppressed because the warrantless search was unreasonable and a pretext for an unconstitutional search.
 

 
 *1173
 
 In
 
 State v. Shields,
 
 614 So.2d 1279, 1284 (La.App. 2 Cir.1993),
 
 writ denied,
 
 620 So.2d 874 (La.1993), the appellate court found that the search for a probation violation was not a subterfuge for a criminal investigation where there was no ongoing investigation of the defendant at the time the informant reported a possible probation violation and the search of the residence was conducted by probation officers only. Likewise, in
 
 State v. Odom,
 
 34,054 (La.App. 2 Cir. 11/1/00), 772 So.2d 281, the court found that the search conducted by the probation officer was not a subterfuge to help the narcotics department conduct a search without the necessary probable cause. In that case, the appellate court noted Ifithat thére was no evidence of an ongoing investigation of defendant at the time the probation officer was notified of his illegal activity, and the search was conducted by the two probation officers.
 

 In the instant case, there was no evidence of an ongoing investigation of defendant. Also, the search of the residence was apparently conducted by a parole officer only. Therefore, we conclude that the search of defendant’s residence was not a subterfuge for a criminal investigation.
 

 In light of the foregoing discussion, we find no error in the trial court’s denial of defendant’s motion to suppress. Accordingly, the arguments raised by defendant in this assigned error are without merit.
 

 ERROR PATENT DISCUSSION
 

 The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975); and
 
 State v. Weiland,
 
 556 So.2d 175 (La. App. 5 Cir.1990). Our review reveals no errors which require corrective action.
 

 For the reasons set forth herein, defendant’s convictions and sentences are hereby affirmed.
 

 CONVICTIONS AND SENTENCES AFFIRMED.
 

 [1]
 

 . LSA-R.S. 15:574.4 H(4)(m) provides that the Board of Parole may require that the parolee agree to be subject to visits by his parole officer at his home without prior notice. LSA-R.S. 15:574.4 H(4)(r) provides that the Board of Parole may require that the parolee agree to searches of his person, his property, his place of residence, his vehicle, or his personal effects at any time by the parole officer assigned to him, with or without an arrest or search warrant, when the parole officer has reasonable suspicion to believe that the person who is on parole is engaged in or has been engaged in criminal activity since his release on parole.