# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-1169

**STATE OF LOUISIANA**

**VERSUS**

**REGINALD TARAL WARREN**

\*\*\*\*\*\*\*\*\*\*

ON APPLICATION FOR SUPERVISORY WRITS FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. 23,906-A
HONORABLE DESIREE DYESS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN D. SAUNDERS**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Marc T. Amy, and Candyce G. Perret,
Judges.

**WRIT DENIED.**

**Billy Joseph Harrington**
**District Attorney**
**Tenth Judicial District**
**P.O. Box 838**
**Natchitoches, LA 71458-0838**
**(318) 357-2214**
**COUNSEL FOR PLAINTIFF/RESPONDENT:**
   **State of Louisiana**

**David Michael Williams**
**Attorney at Law**
**720 Murray Street**
**Alexandria, LA 71301**
**(318) 442-6240**
**COUNSEL FOR DEFENDANT/APPLICANT:**
   **Reginald Taral Warren**

**SAUNDERS, Judge.**

On June 9, 2016, Defendant, Reginald Warren, was charged by bill of information with second offense possession with the intent to distribute CDS II (methamphetamine), in violation of La.R.S. 40:967 and 40:982; possession of CDS V (promethazine), in violation of La.R.S. 40:970; third offense possession of CDS I (marijuana), in violation of La.R.S. 40:966 and 40:982; illegal window tint, in violation of La.R.S. 32:361; and driving while under suspension, in violation of La.R.S. 32:415.

On September 22, 2016, Defendant filed two motions to suppress, alleging an illegal search of a residence and an illegal traffic stop which led to invalid consent to search a vehicle. On June 15, 2017, the trial court held a single hearing on the motions to suppress. On September 11, 2017, the trial court denied Defendant's motions, and on September 28, 2017, the trial court issued "Written Reasons for Judgment," denying Defendant's motions to suppress.

On September 22, 2017, Defendant filed his notice of intent to seek review and the trial court set a November 3, 2017 return date. On November 3, 2017, Defendant sought an extension of the return date from the trial court, which on November 7, 2017, extended the return date to December 18, 2017. Defendant's writ application was timely postmarked on December 18, 2017, and seeks review of the trial court's denial of the motions to suppress.

**ASSIGNMENT OF ERROR:**

In his sole assignment of error, Defendant alleges the trial court erred in denying his motions to suppress. Defendant breaks his argument into four parts: (1) the search of his wallet and seizure of the Motel 6 key card was illegal, (2) the search of the motel room itself should be illegal due to the illegality of the initial search of Defendant's wallet, (3) the search of the motel room was not legal "as a

probationer search based on valid '[r]easonable [s]uspicion' that [he] was engaged in criminal activity[,]" and (4) the State failed to prove the motel room was his residence to make it subject to a probationer search. We will address the legality of the initial stop of Defendant, as well as the search of the wallet, and the search of the motel room itself.

The testimony presented at trial shows that on March 31, 2016, Defendant was stopped by two law enforcement officers who were on the look-out for him for driving a vehicle with illegal tint on the windows. Both officers smelled marijuana, leading to a K-9 open air sniff of the car. The animal alerted, and the officers searched the vehicle, finding marijuana residue. Based on information provided by a narcotics task force sergeant, the officers searched Defendant's wallet and obtained a motel room key card for a nearby Motel 6. At that time, following the arrival of Probation and Parole agents at the traffic stop, Defendant was transported to the Motel 6, and local law enforcement joined officers from Probation and Parole in entering the motel room whose key card Defendant, a parolee, had in his possession at the traffic stop. Officers found marijuana in plain sight in the room and subsequently found methamphetamine hidden in a small bag inside a clothes hamper. At that point, Probation and Parole turned the investigation over to local law enforcement. Upon taking over the investigation from Probation and Parole, local law enforcement sought a warrant for the motel room, after having already located the marijuana and methamphetamine.

On March 31, 2016, was the defendant stopped by Deputy Brandon Smith and Sergeant Clinton Dunn for driving with illegal tint on his windows. While speaking with Defendant, both Deputy Smith and Sergeant Dunn testified they could smell marijuana. Both officers testified the tint was measured and was illegal. Agent Cory Campbell, a K-9 officer, ran his dog around the vehicle, and it

alerted. Deputy Smith was clear that the vehicle was not searched until after Agent Campbell ran his K-9, which alerted. Deputy Smith testified he found "marijuana shake and residue" inside the vehicle, along with cigars and spray bottles that he would consider paraphernalia due to the residue. Deputy Smith clarified that marijuana shake was "loose marijuana that they drop on the carpet or in a vehicle, not enough for us . . . we could really charge for it, but we don't. It's just pieces of it, small pieces of it." Deputy Smith testified that he was instructed to bring Defendant to the Motel 6 by Sergeant Dunn and that he entered a motel room with several Probation and Parole officers, Sergeant Dunn, and Agent Trent Perry to clear the room for officer safety. Deputy Smith noted that while clearing the room, he observed a bag of suspected marijuana in plain view on the bed. He stated he heard the Probation and Parole officers say they were going to search the room prior to the decision to obtain a search warrant.

Sergeant Dunn testified that after the K-9 alerted on Defendant's vehicle, he searched Defendant's wallet where he found a key to a room at Motel 6. Sergeant Dunn believed the search of Defendant's wallet was legal because he felt they had probable cause to search him as a result of the K-9 alerting on the vehicle. Sergeant Dunn testified that he did not observe or recover any narcotics in the vehicle or on Defendant's person. He testified that once he obtained the card from Defendant's wallet, he spent the remainder of the time covering logistics with Sergeant Roberts via the radio. While certain an officer from Probation and Parole eventually arrived at the traffic stop, he did not know the name of the officer. Sergeant Dunn testified the uniformed officers who entered the motel room were there specifically to assist Probation and Parole. He stated that he noticed flakes of marijuana on the table, and he was present when someone found a bag of methamphetamine in a clothes

3

hamper, at which point Sergeant Roberts had everyone exit the room while obtaining a search warrant.

Sergeant Dunn, on cross-examination, reiterated that he did not find narcotics in Defendant's car and that Defendant was not arrested for having illegal narcotics prior to the search of his wallet. He also acknowledged the K-9 alerting to the car did not create probable cause to arrest Defendant, but Defendant was detained at Probation and Parole's request. Sergeant Dunn also testified the sole purpose of searching Defendant's wallet was to obtain the motel key; he was not looking for weapons or narcotics, merely the key. Although Sergeant Dunn initially stated that Defendant was cooperative and handed over his wallet when asked, he acknowledged after reviewing body-cam footage Defendant simply acknowledged the wallet on the hood of the patrol car was his when asked. No testimony was presented to explain why Defendant's wallet was simply sitting on the hood of the car.

Sergeant Dunn testified that Defendant told him he was coming from the mechanic's shop, which was located next to the Motel 6. As Sergeant Roberts had already told Sergeant Dunn and Deputy Smith that Defendant had left the motel, they considered his claim of coming from the mechanic a lie. Sergeant Dunn acknowledged that multiple Probation and Parole officers arrived on-scene at the traffic stop, but he did not know their names. He acknowledged Sergeant Roberts was already in contact with Probation and Parole prior to the traffic stop, though he could not say when the initial contact between them occurred. Sergeant Dunn was unsure who found the methamphetamines in the laundry basket.

Following testimony from Deputy Smith and Sergeant Dunn, defense counsel stated he would not be challenging the validity of the K-9 alerting on the car. Subsequently, Agent Danny Green, an agent with Probation and Parole for the

4

State of Louisiana took the stand. He testified Defendant was on parole at the time of the traffic stop, but that Agent Green was not the parole officer assigned to Defendant. Agent Green testified that if Defendant was staying at a motel, even temporarily, he was required to inform Probation and Parole where he was staying. Furthermore, he testified that Defendant's parole officer, Agent LaPoole, did not know for sure where Defendant was staying when he had been stopped on a prior traffic stop. Agent Green testified that he and other Probation and Parole officers went to the traffic stop to determine if Defendant had violated the conditions of his parole.

Agent Green testified that while speaking with Defendant at the scene of the traffic stop, he asked Defendant "if anyone else was staying with him [at the motel], he said no[.]" Agent Green testified Defendant told him he was staying at the motel room by himself. Agent Green later clarified that Defendant did not directly admit to staying in the motel room but that when asked if anyone else was staying in the room with him, he simply said "no." He also specifically stated that he asked officers from the Natchitoches Parish Sheriff's Office to assist him in searching the motel room, as it was his intent to search the room. He stated the motel staff informed him Defendant had been staying in Room 166 for approximately five days, although he had been in multiple other rooms since February. Agent Green testified he and several other officers entered the motel room using the key card recovered from Defendant, and upon confirming no one else was in the room, he noticed a bag of marijuana on the bed. Agent Green testified that he asked the narcotics task force officers to take over the investigation once it was clear that there were narcotics in plain sight, noting they typically "let the locals" handle it since they were the ones who would need to have the narcotics tested.

5

Agent Green testified that he did not remember anything other than the marijuana being found before he asked the task force officers to take over and that they chose to seek a search warrant because of departmental policy. He left prior to the search pursuant to the warrant. Agent Green testified the conditions of Defendant's parole included: "I agree to visits at my residence or place of employment by my parole officer at any time. I also agree to searches of my person, property, residence, and/or vehicle when reasonable suspicion exists that I am or have been engaged in criminal activity."[1]

Sergeant Jonathan Roberts, a member of the Natchitoches Sheriff's Office's Drug Task Force, testified that he was conducting a narcotics investigation into Defendant based upon a complaint involving Defendant staying at the Motel 6.[2] Sergeant Roberts testified that while surveilling Defendant pursuant to the complaint, he noted a 2001 tan Chevy Tahoe parked outside the Motel 6 and that roughly thirty minutes after seeing the vehicle at the Motel 6 on March 29, he encountered Defendant driving the vehicle at a Chevron station nearby. Sergeant Roberts stated that he saw the vehicle leave the motel on March 31, at which time he alerted other officers to be on the lookout for the Tahoe. This alert led to the traffic stop by Deputy Smith shortly thereafter. Sergeant Roberts testified that he was never present at the scene of the traffic stop, but that he was the one who informed Probation and Parole that Defendant had been stopped. He testified he alerted Sedrick Smith, the Probation and Parole supervisor, who sent Agent Green

---

[1]We note that the actual written conditions of Defendant's parole were not submitted as an exhibit at the motion to suppress hearing. However, this language tracks the language of La.R.S. 15:574.4.2(A)(2)(i), as noted by defense counsel's remark that "this isn't just something that your office made up, this is the law."

[2]We note that the details of the complaint which prompted the investigation of Defendant are not provided, as neither the State nor the defense actually asked about the details of the complaint.

to meet Sergeant Roberts at the motel. He also testified he was never instructed by Probation and Parole to detain Defendant.

Sergeant Roberts testified Defendant had been frequenting the motel and giving an address of 1445 Grace Avenue, which he stated "prompted Agent Green to realize that something was not right" because it was not the address Defendant had reported. Sergeant Roberts testified that he was speaking to Defendant when the motel room was initially entered. Sergeant Roberts testified that when he entered the room the bag of marijuana on the bed was obvious, and he subsequently noticed a bag that was out of place in the clothes hamper. He testified there was a pencil bag which felt like it contained a "rock-like substance" in the clothes hamper. Upon opening the bag, it contained "cellophane baggies with light crystal-like substance in it. At that time, I knew that uh . . . I believed it to be methamphetamine, due to the complaint I got already." Sergeant Roberts testified that at that point he put down the bag, photographed the bag, and informed Agent Green of what he had found. Sergeant Roberts testified that he felt he was assisting Probation and Parole when he found the methamphetamine and that he obtained a search warrant once Probation and Parole turned the investigation over to him as a matter of personal preference because "[y]ou can't go wrong getting a search warrant."

Sergeant Roberts testified on cross-examination that, according to his report, he stated they needed a search warrant when he first entered the room but Probation and Parole told him no warrant was necessary. Sergeant Roberts noted the address Defendant gave to Probation and Parole was on Schoolhouse Road in Cloutierville, but he registered for the motel room with a Grace Avenue address. Sergeant Roberts testified his early surveillance on the motel was "rolling

7

surveillance" where he simply drove through the parking lot, so he could not verify how long Defendant stayed at the motel each night.

*INITIAL TRAFFIC STOP*

Although Defendant does not raise the issue of the original traffic stop to this court, we will quickly address the validity of the initial stop. Testimony from multiple officers during the suppression hearing makes it clear Deputy Smith and Sergeant Dunn stopped Defendant because Sergeant Roberts was investigating him pursuant to a narcotics complaint. As the Supreme Court made clear in *Whren v. U.S.*, 517 U.S. 806, 116 S.Ct. 1769 (1996), the actual motivations of the officers making a traffic stop are irrelevant so long as there is objective evidence the officers had probable cause to believe a traffic violation has occurred. Accordingly, the initial traffic stop for illegal tint was valid.

*SEIZURE AND SEARCH OF DEFENDANT'S WALLET*

"A trial court is afforded great discretion when ruling on a motion to suppress, and its ruling will not be disturbed absent abuse of that discretion." *State v. Wilder*, 09-2322, p. 2 (La. 12/18/09), 24 So.3d 197, 198.

> The Fourth Amendment of the U.S. Constitution and Article I, § 5 of the Louisiana Constitution protect individuals from unreasonable searches and seizures. Warrantless searches and seizures are unreasonable per se unless justified by a specific exception to the warrant requirement. *State v. Manson*, 01-159 (La.App. 5 Cir. 6/27/01), 791 So.2d 749, 757, *cert. denied*, 01-2269 (La.9/20/02), 825 So.2d 1156. However, a person on parole or probation has a reduced expectation of privacy under the Fourth Amendment of the U.S. Constitution and under Article I, § 5 of the Louisiana Constitution. *State v. Young*, 07-988 (La.App. 5 Cir. 6/19/08), 988 So.2d 759, 762.

> An individual on parole or probation does not have the same freedom from governmental intrusion into his affairs as does the average citizen. A probationer must necessarily have a reduced expectation of privacy, which allows for reasonable warrantless searches of his person and residence by his probation officer, even though less than probable cause may be shown. This reduced expectation of privacy derives from the probationer's conviction and his agreement to allow a probation officer to investigate his activities

in order to confirm that he is abiding by the provisions of his probation. *State v. Saulsby*, 04-880 (La.App. 5 Cir. 12/28/04), 892 So.2d 655, 657–658.

A probation officer may not use his authority as a subterfuge to help another police agency that desires to conduct a search, but lacks probable cause. *State v. Malone*, 403 So.2d 1234, 1238 (La.1981). The parole or probation officer must believe that the search is necessary in the performance of his duties and reasonable in light of the total circumstances. *State v. Saulsby*, 892 So.2d at 658. In determining whether a warrantless search by a probation or parole officer was reasonable, the court must consider: (1) the scope of the particular intrusion, (2) the manner in which it was conducted, (3) the justification for initiating it, and (4) the place in which it was conducted. *State v. Malone*, 403 So.2d at 1239; *State v. Young*, 988 So.2d at 763-764. Although the State still bears the burden of proving the admissibility of evidence seized without a warrant, when the search is conducted for probation violations, the State's burden will be met when it establishes that there was reasonable suspicion that criminal activity was occurring. *State v. Saulsby*, 892 So.2d at 658.

*State v. Bolden*, 09-33, pp. 4-5 (La.App. 5 Cir. 5/12/09), 13 So.3d 1168, 1171, *writ denied*, 09-1317 (La. 2/5/10), 27 So.3d 297.

"It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is '*per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043 (1973). As laid out in La.Code Crim.P. art. 703(D), "the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant." Obviously, there was no warrant issued granting Sergeant Dunn the authority to seize and search Defendant's wallet in order to obtain the key card for the motel room which was subsequently searched. Thus, the State bears the burden of proving the search falls into a valid exception to the warrant requirement. The trial court held the search of Defendant's wallet was lawful as a search incident to arrest. Defendant argues the search could not be

9

incident to arrest, correctly noting Deputy Smith's testimony he did not intend to arrest Defendant for the marijuana residue that was found in the vehicle.

In *State v. Sherman*, 05-779, p. 15 (La. 4/4/06), 931 So.2d 286, 296, the supreme court specifically stated "we find the subjective intent of the officers does not determine the reasonableness of a warrantless search incidental to arrest, where the officer did not have an intent to arrest for the offense for which probable cause objectively existed." In *Sherman*, law enforcement officers on a narcotics interdiction patrol observed the defendant standing in the road next to his motorcycle, which may or may not have been in the roadway. The officers spoke to the defendant, who told them his motorcycle was out of gas and that he did not have a driver's license. One of the officers then searched the defendant and found crack cocaine, at which point the defendant was arrested for possession with the intent to distribute CDS II. The supreme court upheld the search as incident to arrest even though the defendant was not arrested for the crime, operating a motor vehicle without a license, for which there was probable cause prior to the search, stating:

> Given the fact the lawful custodial arrest alone is sufficient to find a warrantless search of the person reasonable, [*United States v.*] *Robinson*, 414 U.S. [218,] 235, 94 S.Ct. [467,] 477 [(1973)], and that the search may precede the actual arrest, *Rawlings* [*v. Kentucky*], 448 U.S. [98,] 111, 100 S.Ct. [2556,] 2564 [(1980)], we find where probable cause to arrest exists, a search of the person does not violate the Fourth Amendment or La. Const. art. I, § 5, where the suspect is subject to the greater intrusion of arrest and search.
>
> Nor should the subjective intentions of the officers play any role in our analysis. *See Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996).

*Id*. at 295.

Although the testimony is not very clear regarding how long the traffic stop lasted, it is clear that after law enforcement obtained the wallet and motel key card,

Deputy Smith transported Defendant to the Motel 6 then subsequently transported him to the detention center for booking. There seems to have been some confusion amongst law enforcement, as Sergeant Dunn testified they were detaining Defendant at the traffic stop for Probation and Parole, yet Probation and Parole never asked for Defendant to be detained, and Sergeant Roberts never told Sergeant Dunn and Deputy Smith to detain Defendant.

Under La.Code Crim.P. art. 201: "Arrest is the taking of one person into custody by another. To constitute arrest there must be an actual restraint of the person. The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the one arresting him." As the supreme court has previously stated:

> An arrest is "the taking of one person into custody by another [through] actual restraint [that] may be imposed by force or may result from submission of the person arrested to the custody of one arresting him." *State v. Fisher*, 97-1133 (La.9/9/98), 720 So.2d 1179, 1183; La. C.Cr. P. art. 201. Whether a person has been arrested is determined by an objective test; neither the person's subjective impression nor the lack of formality of the arrest resolves the issue. *State v. Thibodeaux*, 414 So.2d 366, 368 (La.1982). The determination of whether an arrest occurred depends on the totality of the circumstances, but several factors distinguish an arrest from lesser infringements on personal liberty. *State v. Allen*, 95-1754 (La.9/5/96); 682 So.2d 713, 719. A prime characteristic of any Fourth Amendment seizure of a person is whether, under the totality of the circumstances, a reasonable person would not consider himself or herself free to leave. *Id*. Ultimately, whether a person has been arrested depends on circumstances indicating an intent to impose an extended restraint on the person's liberty. *Id*.

*State v. Coleman*, 14-402, pp. 15-16 (La. 2/26/16), 188 So.3d 174, 190-91, *cert. denied*, ___ U.S. ___, 137 S.Ct. 153 (2016).

Although the exact amount of time which passed from the initiation of the traffic stop to the search of the motel room is unclear, it is clear that Defendant was detained after the initial traffic stop, was transported to the Motel 6 in a police cruiser, the Chevy Tahoe he was driving was towed away, and he was formally

11

arrested and booked after the initial search of the motel room. While the defendant in *Coleman* was determined to have not been under arrest following the trial court's determination he had voluntarily cooperated and agreed to be transported to the police station without restraints, there is no testimony in the instant case that would support the notion Defendant voluntarily rode to the Motel 6 with law enforcement. Considering the testimony presented during the suppression hearing, we find that Defendant was arrested shortly after the search of his wallet, as no reasonable person would have considered themselves free to leave under the circumstances. At the time Sergeant Dunn searched Defendant's wallet, both he and Deputy Smith had smelled marijuana, the officers had already determined the window tint was illegal, a K-9 had alerted on Defendant's vehicle, Deputy Smith found marijuana residue in the vehicle, and Defendant had admitted there had been marijuana in the vehicle that day. Under *Sherman*, the search would still be permissible as a search incident to arrest given the existence of probable cause to arrest Defendant for possession of marijuana and the arrest shortly after the search of his wallet. Accordingly, we cannot say that the trial court abused its discretion in finding the search of Defendant's wallet was valid as a search incident to arrest where probable cause existed to arrest Defendant for possession of marijuana.

*SEARCH OF THE MOTEL ROOM*

Defendant argues the search of the motel room was illegal for three reasons: (1) the illegal search of the wallet produced the key card used to enter the motel room, so the search of the motel room was tainted by the illegal search of Defendant's wallet; (2) the search of the motel room was not a valid probationer search because there was no valid reasonable suspicion that he was engaged in criminal activity; and (3) the State failed to prove the motel room was Defendant's residence such that it would be subject to a warrantless search.

12

Our prior finding that the search of Defendant's wallet was legal as a search incident to arrest precludes the first part of Defendant's claim regarding the alleged illegality of the search of the motel room. With regard to Defendant's second claim, he acknowledges that he has a reduced expectation of privacy which allows for warrantless searches when less than probable cause exists for a search due to his status as a parolee but argues "[t]here is no established and/or corroborated facts that would promote the presence of [r]easonable [s]uspicion that the [D]efendant was engaged in criminal [a]ctivity at the motel room[.]" This argument ignores the evidence presented at the suppression hearing.

By the time law enforcement reached the motel and decided to enter Defendant's room, Defendant had already admitted prior to the search of his wallet that his vehicle had marijuana in it earlier in the day, residue of which was found by Deputy Smith. Defendant told Sergeant Dunn the key card was an old, invalid card. However, the motel manager confirmed the card was active for a motel room Defendant had been renting for nearly a week. Further, the motel manager informed law enforcement that Defendant had been renting rooms frequently for over a month. Defendants had not been reporting this to Probation and Parole, and the address Defendant used when renting the motel room was not the address he had provided to Probation and Parole as his residence. The trial court held the officers had reasonable suspicion that Defendant was engaged in or had recently been engaged in criminal activity, and, given the above evidence known to law enforcement when they entered the motel room, we cannot say the trial court abused its discretion.

Defendant, citing *State v. Malone*, 403 So.2d 1234 (La.1981), correctly argues Probation and Parole cannot use their authority to conduct searches as a subterfuge to allow another agency to conduct an otherwise illegal warrantless

13

search. The *Malone* court set forth that parolee search must be reasonable in light of the totality of the circumstances, noting a court "must consider (1) the scope of the particular intrusion, (2) the manner in which it was conducted, (3) the justification for initiating it and (4) the place in which it was conducted." *Id.* at 1239. As noted above, Defendant's wallet was searched legally incident to arrest, and the key card for the room was found during that search. The search of the motel room was conducted by Probation and Parole officers after they were contacted regarding Defendant's possible involvement with narcotics. Upon speaking with Defendant at the traffic stop, Agent Green decided to investigate the hotel, which had never been reported by Defendant to his parole officer. Agent Green testified that if Defendant was going to stay anywhere other than the residence he registered with his parole officer, he would have to notify said officer and receive permission.

Agent Green testified Probation and Parole needed "to go and check the room to verify that that's where he was staying, and look for any items he may not was [sic] supposed to have." He also stated they entered the room to "see if there was anything illegal going on that would be a violation of his probation and his parole." Everyone agreed the initial entry into the room was done by Probation and Parole with local law enforcement assisting. Upon entering the room, marijuana was located in plain view.

Defendant asserts the scope of the intrusion was illegal because the search of his wallet was illegal, a claim we have already found lacks merit. He contends the presence of Probation and Parole officers other than his own is clear proof their presence was "for the mere purpose of creating a method to subterfuge the warrant requirement." While the trial court stated in its written reasons that Danny Green was Defendant's parole officer, that finding is directly contrary to the testimony

14

presented to the trial court, namely Agent Green's specific testimony that he was not Defendant's assigned officer. However, this fact is irrelevant to the case *sub judice*.

In *State v. Brignac*, 17-448 (La. 10/18/17), ___ So.3d ___, the supreme court held the language of La.Code Crim.P. art. 895(A)(13)(a), the statute governing warrantless searches of probationers based upon reasonable suspicion of criminal activity, was specific enough to require that the probationer's actual probation officer be the one to effectuate such a search. Defendant, however, was on parole, not probation. Warrantless searches based on reasonable suspicion of criminal activity for a parolee are governed by La.R.S. 15:574.4.2(A)(2)(i), not La.Code Crim.P. art. 895(A)(13)(a). As this court noted in *State v. Sinegal*, 17-527, p. 8 (La.App. 3 Cir. 12/13/17), ___ So.3d ___, ___ "[u]nlike La.Code Crim.P. art. 895(A)(13)(a), La.R.S. 15:574.4.2 does not reference the assignment of the agents involved in the search." While La.Code Crim.P. art. 895(A)(13)(a) subjects probationers to searches "by the probation officer or the parole officer assigned to [them]," parolees agree "to searches of person, property, residence, or vehicle, when reasonable suspicion exists that criminal activity has been engaged in while on parole." *See* La.R.S. 15:574.4.2(A)(2)(i). As noted in *Brignac*, La.Code Crim.P. art. 895(A)(13)(a) was initially written to apply to parolees, but the legislature instead chose to apply it to probationers only, subsequently writing a new statute for parolees which lacked the specificity of the probation article. Accordingly, parolees are subject to searches pursuant to reasonable suspicion by more than just that parolee's supervising officer. Here, there were three agents from Probation and Parole who felt the circumstances presented sufficient reasonable suspicion that they needed to search Defendant's motel room to ensure he was not violating his parole any further. Defendant, a parolee, was driving a

15

vehicle within which marijuana residue was present and admitted there had been marijuana in the vehicle earlier that day. Clearly, Probation and Parole had reasonable suspicion Defendant had engaged in criminal activity while on parole.

Next, Defendant argues there was "no established and/or corroborated facts that would promote the presence of [r]easonable [s]uspicion that [he] was engaged in criminal [a]ctivity at the motel room." As has been noted repeatedly, there were plenty of facts presented which would support Probation and Parole having reasonable suspicion Defendant may have been engaged in criminal activity in the motel room: he claimed the active key card was just an old card that did not work, there was marijuana residue in his vehicle, he had been renting rooms at the motel for nearly a month, and he had been registering for the motel rooms with an address that did not match the address he registered with Probation and Parole.

Finally, Defendant acknowledges his parole conditions allow for warrantless searches of his residence, but argues the State failed to prove the hotel room was his residence because "clearly he still maintained a residence and there is no evidence that he actually spent the night at the motel or that he relinquished his reported residence." Defendant's argument evidences a belief that for the purposes of parole, a parolee can only have one residence. As noted by the trial court, "to accept this argument would mean that any probationer or parolee engaged in criminal activity could evade such a search by simply doing so in a hotel room." Multiple federal courts of appeal have held that a person can have multiple residences for Fourth Amendment purposes:

> We have found no authority to support [the defendant's] implicit assumption that a person can have only one residence for Fourth Amendment purposes. Rather, when evaluating [the defendant's] expectation of privacy in his home, we are guided by the principle that, so long as [the suspect] possesses common authority over, or some other significant relationship to, the . . . residence, that

16

> dwelling "can certainly be considered . . . 'home' for Fourth Amendment purposes, even if the premises are owned by a third party and others are living there, and even if [the suspect] concurrently maintains a residence elsewhere as well."

*Case v. Kitsap County Sheriff's Dept.*, 249 F.3d 921, 931 (9th Cir. 2001) (quoting *United States v. Risse*, 83 F.3d 212, 217 (8th Cir. 1996)).

Defendant's argument that the motel room was not his residence because it was not the residence reported to Probation and Parole is an argument that has been rejected by this court previously. In *State v. Edwards*, 12-891 (La.App. 3 Cir. 2/6/13), 107 So.3d 883, the defendant was arrested following a parolee search of his girlfriend's apartment. The *Edwards* defendant argued his residence was his parents' address that he gave his parole officer, not his girlfriend's apartment. Noting the defendant himself told his parole officer he stayed at his girlfriend's apartment multiple days a week and his parole officer was unable to contact him at his listed residence multiple times over a two-week span, this court found the defendant was residing at his girlfriend's apartment and that it was therefore subject to a lowered expectation of privacy.

In the case before us, the trial court's written ruling states:

> This court finds that "residence" as used in condition number 9 of the terms of his parole means to include any place where he is presently housed, albeit temporarily, elsewhere than his place of employment, if different. For the purposes of condition number 9, Room 166 of the Motel 6 was Mr. Warren's "residence" to which he had given the state consent to search.

Additionally, *Black's Law Dictionary* discusses "residence" in part by stating:

> *Residence*, usu. just means bodily presence as an inhabitant in a given place; *domicile* usu. requires bodily presence plus an intention to make the place one's home. A person thus may have more than one residence at a time but only one domicile. Sometimes, though, the two terms are used synonymously.

17

BLACK'S LAW DICTIONARY (10th ed. 2014).[3]

The trial court's holding that the room was Defendant's residence would is appropriate under the facts and circumstances of this case using the definition found in *Black's Law Dictionary*. Accordingly, we cannot find that the trial court abused its discretion in finding the motel room was Defendant's residence.

Given the facts that Defendant was carrying an active key card to a motel room where his vehicle had been seen multiples times, a room Defendant had been renting for nearly a week in a motel where he had been renting rooms frequently for over a month, and where Defendant specifically told law enforcement officers no one else was staying in the motel room, we cannot say the trial court abused its discretion in finding the motel room was Defendant's residence such that it was subject to a parolee search, despite Defendant never admitting he was staying at the motel.

In light of the above, we cannot say that the trial court abused its discretion in denying Defendant's motions to suppress.

**<u>WRIT DENIED</u>:** Defendant seeks review of the trial court's September 11, 2017 denial of his motions to suppress filed on September 22, 2016. The trial court did not err in denying Defendant's motions. Accordingly, Defendant's writ application is denied.

---

[3] The statutes governing parole do not define the term "residence." However, an example from a different Chapter of the Code that does define "residennce" is the law governing the registration of sex offenders. Under La.R.S. 15:541(22):

> "Residence" means a dwelling where an offender regularly resides, regardless of the number of days or nights spent there. For those offenders who lack a fixed abode or dwelling, "residence" shall include the area or place where the offender habitually lives, including but not limited to a rural area with no address or a shelter.