MOLAISON, J.
Defendant, Bennie Spriggs, appeals the denial of his motion to suppress evidence following his guilty plea to drug offenses, possession of a firearm by a convicted felon and obstruction of justice with a reservation of his right to appeal the trial court's ruling on the suppression motion, pursuant to State v. Crosby , 338 So.2d 584 (La. 1976). Defendant contends the evidence was obtained unlawfully because the warrantless entry into and initial search of his residence was made by parole officers other than the officer assigned to him, contrary to law, and their visit, ostensibly to determine whether he was in compliance with the conditions of his parole, was a subterfuge for a criminal investigation.
We affirm the trial court's denial of defendant's motion to suppress, affirm his convictions and sentences, and remand the matter to the trial court to correct a discrepancy between the court minutes and the transcript as to the payment of restitution, which we noted in our review of the record for errors patent.
At the time of the parole officers' entry into defendant's apartment in June 2017, the law did not require that visits to a parolee's residence, or searches of the residence, be conducted by the parole officer assigned to the parolee.[1] La. R.S. 15:574.4.2(A)(2)(i) ; State v. Warren , 17-1169 (La. App. 3 Cir. 2/28/18), 239 So.3d 960, 971, citing State v. Sinegal , 17-527 (La. App. 3 Cir. 12/13/17), 2017 WL 6350261 at *8, writ denied , 18-451 (La. 1/8/19), 259 So.3d 1026.
The record supports the trial court's finding that the visit to defendant's residence was a legitimate compliance check and was not a subterfuge for a criminal investigation. The evidence seized pursuant to the plain view exception to the warrant requirement, and on the basis of a search warrant issued thereafter, was lawfully obtained.
FACTUAL AND PROCEDURAL BACKGROUND
The search of defendant's apartment occurred on June 28, 2017, and resulted in defendant being charged by bill of information with possession with intent to distribute heroin (count one), possession of a firearm by a convicted felon (count two), possession with intent to distribute marijuana (count three), possession of Buprenorphine (Suboxone ) (count four), possession of Tramadol (count five), and obstruction of justice (count six), in violation *323 of La. R.S. 40:966(A), 14:95.1, 40:966(A), 40:968(C), 40:969(C) and 14:130.1, respectively.
The hearing on the motion to suppress was held in July 2018. After the motion was denied, defendant withdrew his not guilty pleas and entered a Crosby plea of guilty as charged on all counts, reserving his right to appeal the denial of his motion to suppress.
The trial court sentenced defendant to imprisonment at hard labor for fifteen years each on counts one, two and three and imprisonment at hard labor for five years each on counts four, five and six, with the sentences on all counts to run concurrently with each other and with any other sentence he is currently serving.
Defendant was on parole at the time of these offenses, having been convicted of possession with intent to distribute marijuana, possession with intent to distribute cocaine and attempted possession of a firearm by a convicted felon in 2004. His parole supervision was transferred from East Baton Rouge Parish to Jefferson Parish in February 2017, a few months before the events in question. His assigned parole officer in Jefferson Parish, Agent Steven Becnel, had been to his apartment two or three times, during routine visits to monitor his compliance with the conditions of his parole, but Agent Becnel did not participate in the June 28 visit because he was scheduled for office duty that day. He testified that it was normal for other agents to assist an agent who is on office duty.
Parolees are required by law to refrain from engaging in criminal conduct. La. R.S. 15:574.4.2(A)(1). As a condition of parole, they agree to submit to unannounced visits from their parole officer at their residence or place of employment and to searches of their person, property, residence or vehicle when reasonable suspicion exists that they have engaged in criminal activity while on parole.[2] § 574.4.2(A)(2)(i); State v. Bolden , 09-33 (La. App. 5 Cir. 5/12/09), 13 So.3d 1168, 1172, writ denied , 09-1317 (La. 2/5/10), 27 So.3d 297 ; State v. Wesley , 28,941 (La. App. 2 Cir. 12/13/96), 685 So.2d 1169, 1174 writ denied , 97-0279 (La. 10/10/97), 703 So.2d 603.
BURDEN OF PROOF AND STANDARD OF REVIEW
In a hearing on a motion to suppress, the defendant has the burden of proving that evidence obtained with a warrant should be suppressed, and the State has the burden of proving the admissibility of evidence seized without a warrant. La. C.Cr.P. art. 703(D) ; State v. Parnell , 07-37 (La. App. 5 Cir. 5/15/07), 960 So.2d 1091, 1097, writ denied , 07-1417 (La. 1/7/08), 973 So.2d 733.
The trial court's denial of a motion to suppress is afforded great weight, and it will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Lewis , 12-902 (La. App. 5 Cir. 6/27/13), 121 So.3d 128, 134, writ denied , 13-1926 (La. 4/17/14), 138 So.3d 618.
EVIDENCE AT SUPPRESSION HEARING
On June 28, 2017, three agents with the Louisiana Department of Probation and Parole and a narcotics detective with the Jefferson Parish Sheriff's Office went to defendant's apartment in Harvey, Louisiana. This occurred within a short time after one of the Probation and Parole officers, Agent Douglas Black, was contacted *324 by a sergeant with the New Orleans Police Department's Fourth District Task Force and advised that the Task Force had been conducting surveillance of a residence in Algiers and had observed defendant engaging in what appeared to be illegal narcotics activity there, including selling narcotics in hand-to-hand transactions. Algiers is part of Agent Black's area of supervision, and he testified that he is the person who is generally contacted when the police learn that someone who may be engaged in criminal conduct in Algiers is on probation or parole.
Agent Black and other Probation and Parole agents attempted to contact defendant at the residence in Algiers, but he did not appear there. His address of record with the Probation and Parole office was in Harvey, in an area supervised by Probation and Parole Agent Jacob Rieux.
Agent Black testified that on June 28, 2017, he, Agent Rieux, and Agent Stephen Favorite went to defendant's apartment in Harvey to determine whether he was in compliance with the conditions of his parole. Agent Rieux arranged to have Jefferson Parish Sheriff's Detective John Wiebelt and other narcotics officers accompany them on the compliance check. Detective Wiebelt testified that the defendant was not under investigation by the Sheriff's Office and said he had no prior knowledge of the defendant.
The three parole agents approached the apartment first, while Detective Wiebelt and his officers remained nearby. Agent Rieux knocked on the door and defendant answered. Agent Rieux identified himself and asked the defendant to step outside so they could speak with him. Defendant complied. One of the agents told defendant that they were there for a compliance check. Defendant and the agents then entered the apartment and the agents detained the defendant, for their safety and his. Detective Wiebelt also entered the apartment. Agent Black initially testified that the New Orleans Police Department had issued a warrant for defendant's arrest, but the parties later stipulated that there was no warrant for his arrest in June 2017.
While clearing an area for defendant to sit on a sofa in the front room, Agent Black observed a small plastic bag sticking out from between the sofa cushions. The agents retrieved the bag, which contained eighteen smaller bags of what appeared to be heroin. The contents were field tested and tested positive for heroin. Detective Wiebelt then obtained a search warrant to search the residence. Other illegal drugs and a gun were confiscated in the search.
In the search warrant affidavit and in his report of defendant's arrest, Detective Wiebelt stated that he had accompanied agents with the Department of Probation and Parole as they conducted a compliance check at Spriggs' residence. He did not say anything about the criminal investigation being conducted by the New Orleans Police Department (NOPD). Detective Wiebelt testified that he intentionally omitted any reference to that because it was a different jurisdiction's investigation, it may have still been ongoing, and it was irrelevant to the search warrant request and the arrest report. He testified that no one from the NOPD was present during the search of defendant's apartment and that he did not speak with the NOPD about their investigation.
As noted above, defendant's assigned parole officer, Agent Becnel, did not go with the other parole officers to defendant's apartment on June 28 because he was assigned to office duty that day. Agent Becnel testified that Agent Black had told him the Fourth District Task Force was looking into Mr. Spriggs in connection with *325 some illegal activity that was going on in Algiers.
TRIAL COURT RULING
In ruling on the motion to suppress, the trial court stated, "I find no subterfuge here. This is a compliance check on a parolee, and a search warrant was ultimately obtained. The motion to suppress is denied." The court implicitly rejected defendant's contention that the initial entry into his residence by parole officers was unlawful because it was conducted by parole officers other than his assigned officer.
ASSIGNMENT OF ERROR
Defendant contends the trial court erred in denying his motion to suppress because the State failed to carry its burden of proof sufficient to justify the warrantless entry and search of his residence. He maintains that the unlawfulness of the initial entry tainted the seizure of the heroin without a warrant and the seizure of the other evidence with a warrant.
Defendant's argument is twofold. First, he asserts that La. C.Cr.P. art. 895(A)(13)(a) requires that the initial entry into and warrantless search of a parolee's residence be conducted by the parole officer assigned to the parolee. Additionally, he contends the officers here had no reason to believe he was in violation of the conditions of his parole when they decided to conduct a "compliance check," making their visit to his apartment a subterfuge to help another police agency that desired to conduct a search but lacked probable cause.
ANALYSIS
Assigned Parole Officer
The law cited by defendant in support of his assertion that only a parolee's assigned parole officer may enter and search the parolee's residence without a warrant- La. C.Cr.P. art. 895(A)(13)(a) -applies only to probationers, not to parolees.[3] State v. Warren , 239 So.3d at 971.
The law applicable to parolees appears in La. R.S. 15:574.4.2(A)(1) and (A)(2)(i), which state:
A. (1) The committee on parole may make rules for the conduct of persons heretofore or hereafter granted parole. When a prisoner is released on parole, the committee shall require as a condition of his parole that he refrain from engaging in criminal conduct.
(2) The committee may also require, either at the time of his release on parole or at any time while he remains on parole, that he conform to any of the following conditions of parole which are deemed appropriate to the circumstances of the particular case:
.....
(i) Agree to visits at residence or place of employment by the probation and parole officer at any time.
*326 Further agrees to searches of person, property, residence, or vehicle, when reasonable suspicion exists that criminal activity has been engaged in while on parole. (Emphasis added.)
At the time of the visit in this case in June 2017, this law, unlike the law applicable to probationers, did not require that visits to a parolee's residence be conducted by the parole officer assigned to him. State v. Warren , 239 So.3d at 971 ; State v. Sinegal , 2017 WL 6350261 at *8. That requirement did appear in the law applicable to parolees before August 1, 2012, as noted in State v. Bolden , 13 So.3d at 1172 & n. 1. See also State v. Wesley , 685 So.2d at 1174. The legislature removed that requirement by Acts 2012, No. 241, effective August 1, 2012. The law as amended in 2012 was in effect on June 28, 2017.
In 2018, the legislature enacted Subsection I of La. R.S. 15:574.4.2, which states:
For purposes of this Section, "probation and parole officer" means:
(1) The probation and parole officer originally assigned to the parolee.
(2) Any probation and parole officer who is subsequently assigned or directed by the Department of Public Safety and Corrections to supervise the parolee, whether the assignment to the parolee is temporary or permanent.
Acts 2018, No. 351.[4]
This amendment took effect on August 1, 2018. It was not in effect on June 28, 2017, when the parole officers visited defendant's residence. In 2017, La. R.S. 15:574.4.2 did not define the term "probation or parole officer" or limit the authority for visits to a parolee's residence to the parolee's assigned parole officer. State v. Warren , 239 So.3d at 971 ; State v. Sinegal , 2017 WL 6350261 at *8.
Purpose of Visit
The jurisprudence has recognized that a parolee agrees to submit to unannounced visits from his parole officer (or a parole officer, under the wording of the law in effect from 2012 until 2018) as a condition of parole, and that it is an appropriate function of a parole officer to conduct unannounced, random checks on parolees. State v. Bolden , 13 So.3d at 1172 ; State v. Wesley , 685 So.2d at 1174 ; State v. Robertson , 06-167 (La. App. 3 Cir. 7/16/08), 988 So.2d 294, 303, writ denied , 08-2301 (La. 9/4/09), 17 So.3d 950.
As a result of his conviction of a crime and his agreement to allow a probation or parole officer to investigate his activities in order to confirm that he is abiding by the conditions of his release from custody, an individual on probation or parole has a reduced expectation of privacy and freedom from governmental intrusion into his affairs. State v. Malone , 403 So.2d 1234, 1238 (La. 1981) ; State v. Bolden , 13 So.3d at 1171. This reduced expectation of privacy allows for warrantless searches of his person and residence by a probation or parole officer who has reasonable suspicion to believe the person is engaging in criminal activity, with "reasonable suspicion" meaning more than a hunch, but less than probable cause. State v. Malone , 403 So.2d at 1239 ;
*327 State v. Bolden , 13 So.3d at 1171. "Reasonable suspicion" requires no more than that the parole officer be able to point to specific and articulable facts that, taken together with rational inferences form those facts, reasonably warrant a belief in the conclusion that a condition of parole has been or is being violated. U.S. v. Scott , 678 F.2d 32, 35 (5th Cir. 1982).
A probation or parole officer may not use his authority as a subterfuge to help another police agency that desires to conduct a search in connection with a criminal investigation, but lacks probable cause. State v. Malone , 403 So.2d at 1238 ; State v. Bolden , 13 So.3d at 1171.
Parolees must refrain from engaging in criminal activity while on parole. La. R.S. 15:574.4.2(1). The same is true for probationers. La. C.Cr.P. art. 895(A). A probation or parole officer who receives information that a person under supervision may be engaging in criminal activity, and thus violating a condition of probation or parole, has a duty to investigate and determine whether or not the person is in compliance with the conditions of his release from custody. State v. Vailes , 564 So.2d 778, 781 (La. App. 2 Cir. 1990) ; State v. Epperson , 576 So.2d 96, 100 (La. App. 2 Cir. 1991), writ denied , 580 So.2d 920 (La. 1991).
In this case, Probation and Parole Agent Black received information from a sergeant with the New Orleans Fourth District Task Force that the defendant had been observed engaging in the sale of illegal narcotics, including hand-to-hand transactions, at a residence in Algiers. This information, which Agent Black shared with other parole officers, provided them with a reasonable suspicion that defendant was engaging in criminal activity while on parole for past drug crimes. The parole officers had a duty to investigate and determine whether that information was accurate and were entitled to do so through a random unannounced visit to defendant's apartment. In such circumstances, the fact that they were accompanied by sheriff's officers does not negate that the purpose of their visit was to determine whether the defendant was in compliance with the conditions of his parole. See and compare State v. Wesley , 685 So.2d at 1175 ; State v. Odom , 34,054 (La. App. 2 Cir. 11/1/00), 772 So.2d 281, 286-287. The sheriff's office was not investigating the defendant, and no one from the investigating agency in New Orleans participated in the visit or the search that followed. This case is factually distinguishable from cases in which a purported compliance check was found to be a subterfuge for a criminal investigation, such as State v. Saulsby , 04-880 (La. App. 5 Cir. 12/28/04), 892 So.2d 655.
CONCLUSION
Based on the evidence in the record, we conclude that the State carried its burden of proof sufficient to justify the warrantless entry into and search of defendant's residence. At the time of these offenses, parole officers other than the officer assigned to a defendant could lawfully conduct compliance checks. The record clearly supports the trial court's finding that the visit to defendant's apartment was a legitimate compliance check and was not a subterfuge for a criminal investigation.
The officers were lawfully inside the apartment when they observed a bag of what appeared to be heroin that was sticking out from between the sofa cushions. The heroin was seized under the plain view exception to the warrant requirement, which allows seizure of evidence in plain view when there is prior justification for an intrusion into the protected area and it is immediately apparent, without close inspection, *328 that the items seized are evidence or contraband. State v. Marks , 09-260 (La. App. 5 Cir. 10/27/09), 28 So.3d 342, 352-353, writ denied , 09-2568 (La. 5/7/10), 34 So.3d 860. The other evidence was seized on the basis of a search warrant obtained after the heroin was found in the apartment.
We find no error in the trial court's denial of the motion to suppress.
ERROR PATENT REVIEW
We have reviewed the record for errors patent, pursuant to La. C.Cr.P. art. 920, State v. Oliveaux , 312 So.2d 337 (La. 1975) and State v. Weiland , 556 So.2d 175 (La. App. 5 Cir. 1990). We note that the minute entry of defendant's sentencing reflects that the trial court ordered defendant to pay $ 500 in restitution to James Harold. However, there is no mention of restitution in the transcript of defendant's guilty plea and sentencing or in the schedule of fines and fees in the record. When there is a conflict between the minutes and the transcript, the transcript prevails. State v. Lynch , 441 So.2d 732, 734 (La. 1983). We remand the matter to the trial court with instructions to conform the minutes to the transcript, as noted below.
DECREE
We affirm the trial court's denial of defendant's motion to suppress and affirm defendant's convictions.
With respect to sentencing, we remand the matter to the trial court for the limited purpose of correcting the court minutes concerning sentencing to conform to the transcript as to the payment of restitution. Further, we direct the Clerk of Court for the 24th Judicial District Court to transmit the corrected minute entry to the appropriate authorities in accordance with La. C.Cr.P. art. 892(B)(2) and to the Department of Corrections' legal department. See State v. Garcie , 17-609 (La. App. 5 Cir. 4/11/18), 242 So.3d 1279, 1290. In all other respects, we affirm defendant's sentences.
CONVICTIONS AND SENTENCES AFFIRMED. REMANDED WITH INSTRUCTIONS.

As noted in our analysis of this issue below, the law has varied over the years on the issue of whether such visits must be conducted by the parolee's assigned parole officer. Defendant contends the law in effect in June 2017 contained such a requirement.

Before August 1, 2012, the law required that such visits be conducted by the parolee's assigned parole officer. That requirement was removed in 2012. See discussion of the legislative history in the Analysis/Assigned Parole Officer section below.

At the time of these offenses in 2017, La. C.Cr.P. art. 895(A)(13)(a) stated: "When the court places a defendant on probation, it shall require the defendant to refrain from criminal conduct ... and it may impose any specific conditions reasonably related to his rehabilitation, including any of the following. That the defendant shall:
.....
Agree to searches of his person, his property, his place of residence, his vehicle, or his personal effects, or any or all of them, at any time, by the probation officer or the parole officer assigned to him , with or without a warrant of arrest or with or without a search warrant, when the probation officer or the parole officer has reasonable suspicion to believe that the person who is on probation is engaged in or has been engaged in criminal activity." (Emphasis added.)
Article 895(A)(13)(a) was amended in 2018 to expand the definition of the term "probation and parole officer." See footnote 4 below.

This legislation also amended La. C.Cr.P. art. 895(A)(13)(a) to incorporate the second part of the definition of "probation and parole officer" into the law applicable to probationers, for the express purpose of legislatively overruling the Louisiana Supreme Court's decision in State v. Brignac , 17-448 (La. 10/18/17), 234 So.3d 46, "to the extent that the court held that a warrantless search of a probationer's residence violates the provisions of Code of Criminal Procedure Article 895(A)(13)(a) when the search is not conducted by the probation officer assigned to the probationer by the Department of Public Safety and Corrections." Acts 2018, No. 351, Section 3.